[No. S067443. Aug. 30, 1999.]

THE PEOPLE, Plaintiff and Appellant, v.
RAYMOND LAWRENCE FRAZER, Defendant and Respondent.

**COUNSEL**

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson and David P. Druliner, Chief Assistant Attorneys General, Robert R. Anderson, Assistant Attorney General, W. Scott Thorpe and Janet Gaard, Assistant Attorneys General, for Plaintiff and Appellant.

William T. Rigsby for Defendant and Respondent.

Charles M. Sevilla and John T. Philipsborn for California Attorneys for Criminal Justice as Amicus Curiae on behalf of Defendant and Respondent.

Law Offices of Michael B. Dashjian and Michael B. Dashjian for California Appellate Defense Counsel as Amicus Curiae on behalf of Defendant and Respondent.

## OPINION

**BAXTER, J.**—For many years, the Penal Code[1] has contained statutes of limitation allowing prosecution of alleged child molesters within a fixed number of years after the crime was committed. (See, e.g., § 800.) Recently, the Legislature added section 803, subdivision (g) (section 803(g)), to the statutory scheme to permit prosecution of such crimes for an additional period—within one year of the time the victim reports an independently corroborated crime to law enforcement officials. By its own terms, the new one-year limitations period applies whether the crime occurred before or after section 803(g) became effective. The new law also applies without regard to whether the fixed statute of limitations for the crime has already expired, and had already expired, when section 803(g) took effect.

Pursuant to section 803(g), defendant was charged with violating section 288, prohibiting lewd conduct against children, within one year after the victim reported the crime to the police. The fixed limitations period in existence when the crime occurred had run before the complaint was filed, and before section 803(g) became effective.

Defendant demurred on grounds section 803(g) constituted an impermissible ex post facto law under the United States and California Constitutions, and unfairly deprived him of a statute of limitations defense under the due process clauses of the United States Constitution. No argument was made that a law increasing the time for filing charges can never target defendants who committed their crimes before the new longer statute of limitations was enacted. Rather, defendant challenged the postcrime statutory change only insofar as it affected individuals who, like him, were accused of crimes already time-barred under prior law. The trial court sustained the demurrer and dismissed the case. The Court of Appeal affirmed. The People sought review of the judgment in this court.

For reasons we explain, defendant's challenge to section 803(g) cannot prevail under the formula prescribed in *Collins* v. *Youngblood* (1990) 497 U.S. 37 [110 S.Ct. 2715, 111 L.Ed.2d 30] (*Collins*) for determining when penal legislation triggers ex post facto protection. With respect to defendant's due process claim, there is no authority specifically authorizing statutes like section 803(g) in criminal cases. However, the United States Supreme Court has rejected analogous attempts to retain the benefit of an expired statute of limitations as a matter of substantive due process. The high court has also indicated that any procedural due process inquiries concerning the timing of a criminal indictment are inherently factual in nature. Based on

---

[1] All further statutory references are to the Penal Code except as otherwise stated.

these principles, section 803(g) is not unconstitutional per se. We will therefore reverse the judgment.

## I. STATUTORY BACKGROUND

California's criminal statutes of limitation were first enacted in 1851 and codified in 1872. The entire scheme, which currently appears in sections 799 through 805.5, was overhauled in 1984. (Stats. 1984, ch. 1270, §§ 1, 2, pp. 4335-4337.) At that time, the Legislature determined that piecemeal amendment over the years had produced a scheme that was confusing, inconsistent, and lacking in cohesive rationale. The 1984 revisions sought to balance the state's interest in barring stale claims against the need to pursue and punish criminal offenders, particularly in serious cases. (Recommendation Relating to Statutes of Limitation for Felonies (Jan. 1984) 17 Cal. Law Revision Com. Rep. (1984) pp. 307-313 (Statutes of Limitation); see generally, Uelmen, *Making Sense out of the California Criminal Statute of Limitations* (1983) 15 Pacific L.J. 35.)

There is no statute of limitations for murder, embezzlement of public funds, and certain other offenses punishable by life imprisonment. (§ 799.) Otherwise, felony cases, including those involving sex crimes against children, are generally governed by the limitation periods set forth in sections 800 and 801.

Basically, a felony prosecution must be "commenced" either three years (§ 801) or six years (§ 800) "after commission of the offense," depending upon the term of imprisonment statutorily available as punishment for the crime.[2] Section 804 describes the circumstances under which prosecution is "commenced" to include the time at which a criminal complaint, indictment, or information "is filed." (*Id.*, subds. (a) & (b).) Section 805 makes clear that the "maximum punishment prescribed by statute" determines the applicable limitations period, and also defines the quoted phrase. (*Id.*, subd. (a).)

Exceptions to sections 800 and 801 are contained in section 803. According to subdivision (a), section 803 sets forth the exclusive circumstances under which such statutory periods may be "extended" or "tolled." As enacted in 1984, and continuing through the present time, section 803 suspends the running of the statutory period while another prosecution based

---

[2]Section 800 states: "Except as provided in Section 799, prosecution for an offense punishable by imprisonment in the state prison for eight years or more shall be commenced within six years after commission of the offense."

Section 801 states: "Except as provided in Sections 799 and 800, prosecution for an offense punishable by imprisonment in the state prison shall be commenced within three years after commission of the offense."

on the same conduct is pending against the defendant in state court (*id.,* subd. (b)), delays commencement of the statutory period for certain offenses involving fraud, theft, and breach of fiduciary duty until the crime is discovered (*id.,* subd. (c)), and suspends, within certain limits, the running of the statutory period while defendant is absent from the state (*id.,* subd. (d)). (See also *id.,* subd. (e), added by Stats. 1985, ch. 357, § 1, p. 1509 [delaying start of statutory period until certain Water Code and Health and Safety Code violations are discovered].)

Beginning in the late 1980's, lawmakers across the country became increasingly aware that young victims often delay reporting sexual abuse because they are easily manipulated by offenders in positions of authority and trust, and because children have difficulty remembering the crime or facing the trauma it can cause. Hence, states which traditionally limited the time for prosecuting child molestation in a manner similar to sections 800 and 801 have started to substantially increase the time in which criminal charges can be filed after the assault occurred.[3] Although they operate in a variety of ways, these new statutes generally apply to crimes committed both before and after their enactment. The new longer statutes of limitation are based on the apparent premise that both past and future sex crimes against children would otherwise go largely unpunished.

The California Legislature took similar steps when it added subdivision (g) to section 803, effective January 1, 1994. (Stats. 1993, ch. 390, § 1 (the 1994 law).) As originally enacted, section 803(g) stated that where certain serious sex offenses were allegedly committed against a victim who was under age 18 at the time, and where the "limitation period specified in Section 800 or 801 has expired," a criminal complaint is nonetheless timely if it is filed "within one year of the date of a report to a law enforcement

---

[3] Increases by other states in the statutory time for filing criminal charges in child sexual abuse cases, as well as the policies underlying such changes, are well documented in recent legal writings. (See Adams, *Beyond the Reach of the Courts?: The Constitution, Retroactivity, and Childhood Sexual Abuse* (1997) 28 Pacific L.J. 796 & fn. 5 (*Retroactivity and Childhood Sexual Abuse*); Note, *Have We Gone Far Enough? Children Who Are Sexually Abused and the Judicial and Legislative Means of Prosecuting the Abuser* (1992) 8 St. John's J. Legal Comment. 339, 340-342, 355-357, 363-365; Porto, *New Hampshire's New Statute of Limitations for Child Sexual Assault: Is It Constitutional and Is It Good Public Policy?* (1991) 26 New Eng. L.Rev. 141, 142-143, 159-162; Comment, *Child Sexual Abuse and Criminal Statutes of Limitation: A Model for Reform* (1990) 65 Wash. L.Rev. 189, 190-191, 197, 201-203 (*A Model for Reform*); Comment, *Statute of Limitations for Child Sexual Abuse Offenses: A Time for Reform Utilizing the Discovery Rule* (1989) 80 J. Crim. L. & Criminology 842, 843, 859-860 (*A Time for Reform*); Note, *Retroactive Application of Legislatively Enlarged Statutes of Limitations for Child Abuse: Time's No Bar to Revival* (1989) 22 Ind. L.Rev. 989, 990-997 (*Time's No Bar to Revival*); see Sagatun & Edwards, Child Abuse and the Legal System (1995) pp. 113-144, 220-223.)

agency" by the victim about the crime.[4] Under the literal terms of the 1994 law, the victim could be "any age" at the time the report was made and the extended period in section 803(g) began to run. However, the 1994 statute required "independent evidence that clearly and convincingly corroborates the victim's allegation," and circumscribed the manner in which this standard could be met. (Former § 803(g)(2).)

Prosecutors promptly invoked the foregoing provisions to file child molestation charges based on the time at which the victim reported the crime, regardless of when the crime occurred or when the statute of limitations otherwise expired. Some lower courts found no statutory or constitutional bar to applying section 803(g) even where the limitations period set forth in section 800 or 801 had expired before January 1, 1994.[5]

However, in opinions that were originally published in 1995 and 1996, several Courts of Appeal held that section 803(g), as first enacted, did not apply where prosecution of the crime was otherwise time-barred as of the statute's effective date.[6] This line of cases invoked the general rule disfavoring "retroactive" application of statutes in the absence of a clear

---

[4]The version of section 803(g) which took effect January 1, 1994, read in full as follows:

"Notwithstanding any other limitation of time described in [section 799 et seq.], a criminal complaint may be filed within one year of the date of a report to a law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261 [rape], 286 [sodomy], 288 [lewd conduct], 288a [oral copulation], 288.5 [continuous sexual abuse], 289 [sexual penetration by foreign object], or 289.5 [fleeing sex offender]. This subdivision shall apply only if both of the following occur:

"(1) The limitation period specified in Section 800 or 801 has expired.

"(2) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation which is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation which would otherwise be inadmissible during trial. Independent evidence shall not include the opinions of mental health professionals." (Stats. 1993, ch. 390, § 1.)

[5](People v. Maloy (Cal.App.) [Court of Appeal reversed trial court judgment denying prosecutorial motion to reinstate complaint that had been dismissed as time-barred under section 803(g)], review granted November 22, 1995, on April 24, 1997, review dismissed in light of intervening amendments to section 803(g); Lynch v. Superior Court (1995) 33 Cal.App.4th 1223, 1225-1226 [39 Cal.Rptr.2d 414] (Lynch) [trial court overruled defendant's demurrer to complaint as time-barred under section 803(g), but ruling was later vacated on mandate by Court of Appeal], review denied May 25, 1995.)

[6](People v. King (Cal.App.), review granted December 11, 1996, on April 24, 1997, review dismissed in light of intervening amendments to section 803(g); People v. Sowers (Cal.App.), review granted March 14, 1996, on April 24, 1997, review dismissed in light of intervening amendments to section 803(g); People v. Richard G. (Cal.App.), review granted September 14, 1995, on April 24, 1997, review dismissed in light of intervening amendments to section 803(g); Lynch, supra, 33 Cal.App.4th 1223.)

contrary intent.[7] These decisions relied primarily on the absence of explicit language in the 1994 law stating that it "revived" the state's ability to prosecute defendants against whom the fixed statute of limitations had run before 1994. Some of these Court of Appeal decisions assumed a contrary interpretation would violate ex post facto principles.[8]

Judicial reluctance to apply section 803(g) in older child molestation cases did not go unnoticed by the Legislature. Through an amendment that became operative January 1, 1997, the statute identified in greater detail the cases that could be prosecuted despite delayed reporting of the crime. (Stats. 1996, ch. 130, § 1 (the 1996 amendment or version).)

First, the 1996 version retained, without substantive change, all language that had been part of the 1994 law.[9] Thus, according to section 803(g)(1), as amended in 1996, a criminal complaint is timely if it is filed no more than "one year" after a victim of "any age" reports to a law enforcement agency that he or she, "while under the age of 18 years," was sexually abused by the defendant. Like its predecessor, the 1996 version applied where the "limitation period specified in Section 800 or 801 has expired." (Former § 803(g)(2)(A).) "[I]ndependent evidence" substantiating

---

[7](See § 3 [stating no provision of the Penal Code "is retroactive, unless expressly so declared"]; *People* v. *Hayes* (1989) 49 Cal.3d 1260, 1274 [265 Cal.Rptr. 132, 783 P.2d 719] [stating basic rule of statutory construction that new statutes are "generally presumed to operate prospectively absent an express declaration of retroactivity or a clear and compelling implication that the Legislature intended otherwise"]; *Evangelatos* v. *Superior Court* (1988) 44 Cal.3d 1188, 1209 [246 Cal.Rptr. 629, 753 P.2d 585] [explaining that general presumption in favor of prospectivity may be overcome by "express language in the statute calling for retroactive application" or "extrinsic sources" making it "very clear" that the Legislature intended such a result].)

[8](*People* v. *Regules* (Cal.App.), review granted November 16, 1995, on April 24, 1997, review dismissed in light of intervening amendments to section 803(g).)

[9]As a result of the 1996 amendment, language imported wholesale from the original version of section 803(g) was reorganized into newly configured subsections (1) and (2), as follows:

"(1) Notwithstanding any other limitation of time described in [section 799 et seq.], a criminal complaint may be filed within one year of the date of a report to a law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5.

"(2) This subdivision applies only if both of the following occur:

"(A) The limitation period specified in Section 800 or 801 has expired.

"(B) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation that otherwise would be inadmissible during trial. Independent evidence does not include the opinions of mental health professionals." (Stats. 1996, ch. 130, § 1.)

the victim's allegation was also still required, and was defined no differently than before. (Former § 803(g)(2)(B).)

Second, the 1996 amendment added provisions that had not previously appeared in the statute.[10] Critical here is new language which, as explained later in the opinion, targeted the line of Court of Appeal cases declining to apply section 803(g) in molestation cases that were time-barred before the law came into existence.

Specifically, the 1996 version made clear that the one-year limitations period set forth in section 803(g) "applies to a cause of action arising before, on, or after January 1, 1994, the effective date of this subdivision." (Former § 803(g)(3)(A) & (3)(B).) The 1996 amendment also made explicit the Legislature's intent to "revive any cause of action barred by Section 800 or 801" where the complaint is filed within one year of the time the victim reported the crime to law enforcement officials, as otherwise required by the statute. (Former § 803(g)(3)(A) & (3)(B)(i).)[11]

An overview of section 803(g) would not be complete without mentioning that the statute was amended a second time, effective June 30, 1997. (Stats.

---

[10]Language included for the first time in section 803(g) as a result of the 1996 amendment was placed in subsection (3), as follows:

"(3)(A) Effective July 1, 1997, this subdivision applies to a cause of action arising before, on, or after January 1, 1994, the effective date of this subdivision, and if the complaint is filed within the time period specified in this subdivision, it shall revive any cause of action barred by Section 800 or 801.

"(B) Effective January 1, 1997, through June 30, 1997, this subdivision applies to a cause of action arising before, on, or after January 1, 1994, the effective date of this subdivision, and it shall revive any cause of action barred by Section 800 or 801 if either of the following occurs:

"(i) The complaint is filed within the time period specified in this subdivision[, or]

"(ii) The victim made the report required by this subdivision to a law enforcement agency between January 1, 1994, and January 1, 1997, and a complaint was not filed within the time period specified in this subdivision or was filed within the time period but was dismissed, but a complaint is filed or refiled on or before June 30, 1997." (Stats. 1996, ch. 130, § 1.)

[11]We note that the 1996 amendment also inserted a special savings clause, appearing in former section 803(g)(3)(B)(ii), and quoted in full in the preceding footnote. This provision gave prosecutors until June 30, 1997, to timely "file" or "refile" a complaint in any child molestation case in which the victim reported the crime to a law enforcement agency between January 1, 1994, and January 1, 1997, and in which the complaint either "was not filed within the [one-year] time period specified in [the statute] or was filed within the time period but was dismissed." (Ibid.) By its own terms, the special savings provision that appeared in former section 803(g)(3)(B)(ii) as a result of the 1996 amendment applied regardless of when the crime occurred (i.e., "before, on, or after January 1, 1994"), and even where the effect was to "revive" a prosecution that was otherwise time-barred. (Former § 803(g)(3)(B).)

1997, ch. 29, § 1 (the 1997 amendment).) The 1997 amendment gave rise to the version of section 803(g) which exists at the present time, and which will be cited throughout the opinion.[12]

---

[12]Section 803(g) currently provides in full as follows:

"(1) Notwithstanding any other limitation of time described in [section 799 et seq.], a criminal complaint may be filed within one year of the date of a report to a California law enforcement agency by a person of any age alleging that he or she, while under the age of 18 years, was the victim of a crime described in Section 261, 286, 288, 288a, 288.5, 289, or 289.5.

"(2) This subdivision applies only if both of the following occur:

"(A) The limitation period specified in Section 800 or 801 has expired.

"(B) The crime involved substantial sexual conduct, as described in subdivision (b) of Section 1203.066, excluding masturbation that is not mutual, and there is independent evidence that clearly and convincingly corroborates the victim's allegation. No evidence may be used to corroborate the victim's allegation that otherwise would be inadmissible during trial. Independent evidence does not include the opinions of mental health professionals.

"(3)(A) This subdivision applies to a cause of action arising before, on, or after January 1, 1994, the effective date of this subdivision, and it shall revive any cause of action barred by Section 800 or 801 if any of the following occurred or occurs:

"(i) The complaint or indictment was filed on or before January 1, 1997, and it was filed within the time period specified in this subdivision.

"(ii) The complaint or indictment is or was filed subsequent to January 1, 1997, and it is or was filed within the time period specified within this subdivision.

"(iii) The victim made the report required by this subdivision to a law enforcement agency after January 1, 1994, and a complaint or indictment was not filed within the time period specified in this subdivision, but a complaint or indictment is filed no later than 180 days after the date on which either a published opinion of the California Supreme Court, deciding the question of whether retroactive application of this subdivision is constitutional, becomes final or the United States Supreme Court files an opinion deciding the question of whether retroactive application of this subdivision is constitutional, whichever occurs first.

"(iv) The victim made the report required by this subdivision to a law enforcement agency after January 1, 1994, and a complaint or indictment was filed within the time period specified in this subdivision, but the indictment, complaint, or subsequently filed information was dismissed, but a new complaint or indictment is filed no later than 180 days after the date on which either a published opinion of the California Supreme Court, deciding the question of whether retroactive application of this subdivision is constitutional, becomes final or the United States Supreme Court files an opinion deciding the question of whether retroactive application of this subdivision is constitutional, whichever occurs first.

"(B)(i) If the victim made the report required by this subdivision to a law enforcement agency after January 1, 1994, and a complaint or indictment was filed within the time period specified in this subdivision, but the indictment, complaint, or subsequently filed information was dismissed, a new complaint or indictment may be filed notwithstanding any other provision of law, including, but not limited to, subdivision (c) of Section 871.5 and subdivision (b) of Section 1238.

"(ii) An order dismissing an action filed under this subdivision, which is entered or becomes effective at any time prior to 180 days after the date on which either a published opinion of the California Supreme Court, deciding the question of whether retroactive application of this section is constitutional, becomes final or the United States Supreme Court files an opinion deciding the question of whether retroactive application of this subdivision is

In brief, the 1997 amendment did not disturb core provisions authorizing commencement of a prosecution within "one year" of the date of a report to a law enforcement agency by a person of "any age" claiming that he or she was the victim of an enumerated sex crime "while under the age of 18 years." (§ 803(g)(1).) The one-year period continues to apply where the "limitation period specified in Section 800 or 801 has expired," and where "independent evidence" of a clear, convincing, and specified nature supports the victim's claim. (§ 803(g)(2)(A) & (2)(B).) However, the 1997 amendment used a new word—"California"—to describe the "law enforcement agency" to which the requisite report must be made. (§ 803(g)(1).)

The 1997 amendment also left unchanged language that first appeared in the 1996 version of the statute concerning the state's ability to file criminal charges in cases that were time-barred before 1994. Hence, with respect to any complaint or indictment filed within the one-year period provided therein, the statute "applies to a cause of action arising before, on, or after January 1, 1994, the effective date of this subdivision, and it shall revive any cause of action barred by Section 800 or 801." (§ 803(g)(3)(A).)

In all other respects, the 1997 amendment made changes not directly applicable here concerning cases in which the victim reported the crime after January 1, 1994, and in which a complaint or indictment is filed only after the one-year period in section 803(g) has expired, or in which a complaint or indictment filed within one year of the report is dismissed and later refiled. (§ 803(g)(3)(A)(iii) & (iv), (3)(B)(i)-(iii).) Of particular interest in these provisions, however, is language concerning the timeliness of prosecutions instituted, or reinstituted, within a certain time after an opinion of this court, or the United States Supreme Court, finally decides whether "*retroactive application*" of the statute "is constitutional." (§ 803(g)(3)(A)(iii) & (iv), (3)(B)(ii), italics added.)[13]

---

constitutional, whichever occurs first, shall not be considered an order terminating an action within the meaning of Section 1387.

"(iii) Any ruling regarding the retroactivity of this subdivision or its constitutionality made in the course of the previous proceeding, by any trial court or any intermediate appellate court, shall not be binding upon refiling."

[13]Section 803(g) is not the only statute of its kind in California. A similar provision, subdivision (f), was added to section 803 a few years before subdivision (g) was enacted. (Stats. 1989, ch. 1312, § 1, p. 5269.) While section 803(g) concerns the timeliness of child molestation charges based on a police report made by a victim of "any age," including victims who have reached adulthood, subdivision (f) of section 803 provides one year within which to prosecute enumerated sex crimes reported "to a responsible adult or agency" by a victim "under 18 years of age." (*Id.*, subd. (f)(1).) The two provisions differ in certain respects. Subdivision (f) of section 803 does not require independent evidence to corroborate the victim's report. (Cf. § 803(g)(2)(B).) Subdivision (f) of section 803 also stands alone in

## II. Procedural History

On October 21, 1996, the district attorney filed a complaint in Mendocino County Municipal Court charging defendant with one count of lewd conduct upon a child under age fourteen in violation of section 288, subdivision (a) (section 288(a)), a felony. The crime allegedly occurred 12 years earlier, between October 1, 1984, and December 31, 1984.[14] The underage victim was identified as Jessica F. In addition, the complaint alleged that prosecution of the crime was authorized under section 803(g), which was described as an "exception" to the six-year statute of limitations in section 800.

Defendant demurred on the ground the action was time-barred under section 800, which "expired as to this charge no later than December 31, 1990." According to defendant, the complaint could not be considered timely under section 803(g) even assuming law enforcement officials received the victim's report no more than one year earlier. First, defendant asserted, as a matter of statutory interpretation, that the additional one-year limitations period in section 803(g) does not apply where, as here, the six-year period in section 800 had expired before section 803(g) became effective on January 1, 1994. In the alternative, defendant urged that a contrary construction of section 803(g) would violate the ex post facto clauses of the United States and California Constitutions, and the due process clauses of the United States Constitution.

On February 10, 1997, the municipal court sustained the demurrer and ordered the case dismissed. In a written statement of decision, the court reasoned that section 803(g) should be construed in defendant's favor because, as first enacted in 1994, it did not clearly govern actions that were time-barred before its effective date. However, the court apparently did not consider the 1996 amendment to section 803(g), which became effective 40

---

requiring that "at least one" enumerated sex crime involving the defendant and the victim occur "within the limitation period specified for that crime in either Section 800 or 801." (§ 803, subd. (f)(2)(B).) However, the one-year period in both provisions applies where the limitations period in section 800 or 801 "has expired." (§ 803, subds. (f)(2)(A) & (g)(2)(A).) Moreover, the 1996 and 1997 amendments to section 803(g) made corresponding changes in subdivision (f) of the same section at the same time. As a result, section 803, subdivision (f)(3) contains express "revival" and "retroactivity" provisions virtually identical to language now under review in section 803(g)(3).

[14]With the exception of a few nonsubstantive changes, section 288(a) has remained the same since 1984, when the crime allegedly occurred, through the present time. Section 288(a) currently states: "Any person who willfully and lewdly commits any lewd or lascivious act, including any of the acts constituting other crimes provided for in Part 1 [of the Penal Code], upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child, is guilty of a felony and shall be punished by imprisonment in the state prison for three, six, or eight years."

days before the ruling on the demurrer, and which added language bearing on the applicability of the statute in cases such as defendant's. Having resolved the matter in favor of defendant on statutory grounds, the municipal court did not reach the constitutional questions he had raised.

The People promptly moved in superior court to reinstate the complaint. They argued that the 1996 amendment eliminated any ambiguity in the statutory language, and authorized the filing of molestation charges where the statute of limitations had otherwise expired before 1994, and where the victim reported the crime under the requisite circumstances. The People also urged the court to find no constitutional bar to use of section 803(g) in the present case. In opposing the motion, defendant simply renewed all statutory and constitutional arguments previously set forth in the demurrer.

The superior court issued a written ruling adopting the People's construction of the statute. However, the court found that "the clear legislative intent to revive causes of action already barred by statutes of limitation violates the ex post facto clauses of the United States and/or California Constitutions by changing the legal consequences of a defendant's past conduct." The motion to reinstate the complaint was denied.

The People appealed. The Court of Appeal affirmed the judgment in a brief opinion that accepted the reasoning used by the superior court in denying reinstatement of the complaint. The Court of Appeal observed that two other appellate courts had invalidated section 803(g) on ex post facto grounds insofar as it applied, on its face, to cases that were time-barred before the law was passed. (*People* v. *Bunn* (1997) 53 Cal.App.4th 227, 232-239 [61 Cal.Rptr.2d 734] (*Bunn*); *Lynch, supra,* 33 Cal.App.4th 1223, 1226-1228.) Like *Bunn* and *Lynch,* the court in this case also relied on language in *Falter* v. *United States* (2d Cir. 1928) 23 F.2d 420, 425-426 (*Falter*), which is discussed later in the opinion. We granted the People's petition for review to address the constitutionality of the statute.

### III. Application of Statute

As a threshold matter, the parties assume here, as on appeal, that section 803(g) applies in the present case as a matter of statutory construction. Under this reading of the statute, a felony prosecution which otherwise complies with the requirements of section 803(g) is timely whether or not the crime occurred before January 1, 1994, and whether or not the statutory period otherwise applicable under section 800 or 801 expired before January 1, 1994. Based on the "express language" of the statute, and "extrinsic" evidence in the legislative record, we have no doubt the statute operates in this manner. (*Evangelatos* v. *Superior Court, supra,* 44 Cal.3d 1188, 1209.)

At no point has section 803(g) restricted the amount of time that may pass between commission of the crime and commencement of the prosecution. Nor does the statute place any limits on the age of the victim either at the time a report sufficient to trigger the statute is made, or at the time criminal charges based on such a report are filed. Rather, a felony prosecution commenced within one year of a qualifying report is timely under the literal terms of section 803(g)(2)(A) even, indeed only, if the limitations period otherwise applicable under section 800 or 801 "has expired."

The quoted phrase obviously ensures that the one-year period in section 803(g)(1) does not override or otherwise conflict with sections 800 and 801 where the victim reports the crime to a qualifying law enforcement agency before the three-year or six-year period set forth in the latter provisions "has expired." In this way, the limitations period in section 803(g)—like other "tolling" and "extension" provisions in the same statute—serves to prolong, rather than shorten, the time in which a felony child molestation prosecution may be commenced.

However, nothing in section 803(g) provides that the crime must be committed, or that the limitations period in section 800 or 801 must expire, *after* January 1, 1994, in order for the extended one-year period to apply. The 1996 amendment left no doubt that section 803(g) applies even where the existing statute of limitations expired before January 1, 1994.

As we have seen, certain Court of Appeal opinions of which the Legislature was presumably aware refused to apply section 803(g) in such cases even where criminal charges were filed within one year of the time the victim reported the underlying crime to law enforcement officials. (*Ante*, fn. 6.) This once-published line of authority reasoned that the 1994 law was at least ambiguous insofar as it reflected a legislative intent to "revive" prosecutions that were time-barred under sections 800 and 801 by the time section 803(g) was enacted. Based on the language of the 1996 amendment, the Legislature obviously sought to fill this perceived gap by providing that compliance with the one-year limitations period "*revive*[*s*]" the state's ability to file felony charges in "*any*" action "barred by Section 800 or 801," regardless of whether the crime occurred "*before*, on, or after January 1, 1994," the initial effective date of the statute. (§ 803(g)(3)(A), italics added.)

Because it explicitly applies in prosecutions of all enumerated sex crimes which occurred at any time "before" January 1, 1994, including "any" crime otherwise "barred" by the statute of limitations, section 803(g) necessarily applies where, as here, the six-year period otherwise applicable under section 800 had expired before January 1, 1994. In order to reach a contrary

conclusion, we would have to read section 803(g) as applying to all covered sex-abuse crimes, regardless of when they occurred, *except* in cases in which the limitations period in section 800 or 801 had expired before January 1, 1994. We decline such a tortured construction.

The legislative history of the 1996 amendment confirms this view. Indeed, the Legislature was highly familiar with the various Court of Appeal opinions filed in 1995 and 1996 that declined to apply section 803(g) where "the previously applicable statute of limitations had expired prior to January 1, 1994 (the effective date of Section 803(g))." (Assem. Floor Analysis, Assem. Bill No. 2014 (1995-1996 Reg. Sess.) June 21, 1996, p. 1.) The legislative record identified these Court of Appeal decisions by name and original published citation, and summarized the statutory and constitutional analysis each used to reach this conclusion. (*Id.*, pp. 1-2; Sen. Com. on Crim. Procedure, Analysis of Assem. Bill No. 2014 (1995-1996 Reg. Sess.) June 3, 1996, pp. 7-9.)

According to the legislative record, the primary reason for amending section 803(g) in 1996 was to repudiate these Court of Appeal decisions insofar as they had construed the statute in such a restrictive manner. The 1996 amendment sought to "clarify," through express "retroactivity" and "revival" provisions, that section 803(g) permitted charges to be filed within one year of the victim's report, even where prosecution of the crime was otherwise time-barred before January 1, 1994. (Sen. Com. on Crim. Procedure, Analysis of Assem. Bill No. 2014 (1995-1996 Reg. Sess.) June 3, 1996, pp. 5-7; Sen. Floor Analysis, Assem. Bill No. 2014 (1995-1996 Reg. Sess.) June 3, 1996, pp. 2-4.)

Finally, the Legislature considered and rejected the ex post facto concerns cited by some of the targeted Court of Appeal cases as a basis for not applying section 803(g) in a manner consistent with its underlying intent. Legislative analysts opined that a postcrime increase in the statute of limitations was not the type of criminal legislation prohibited under *Collins, supra,* 497 U.S. 37, even where the limitations period in existence at the time of the crime had already expired. (Assem. Floor Analysis, Assem. Bill No. 2014 (1995-1996 Reg. Sess.) June 21, 1996, pp. 2-3; Assem. Com. on Public Safety, Analysis of Assem. Bill No. 2014 (1995-1996 Reg. Sess.) April 8, 1996, pp. 2-3.)

Thus, consistent with allegations in the complaint, section 803(g) serves as an exception to section 800 in the present case. We next consider the parties' arguments concerning the constitutionality of this result.

## IV. Ex Post Facto Claim

■ The People do not dispute an assumption made by defendant and the Court of Appeal that section 803(g) operates retroactively because it withdraws a basis for demurrer—expiration of the statute of limitations under section 800—which defendant was entitled to assert before section 803(g) was enacted. (See *Weaver* v. *Graham* (1981) 450 U.S. 24, 31 [101 S.Ct. 960, 965, 67 L.Ed.2d 17] [defining retroactive law as "chang[ing] the legal consequences of acts completed before its effective date"]; *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282, 288 [279 Cal.Rptr. 592, 807 P.2d 434] [same].) The People argue, however, that defendant and the Court of·Appeal are mistaken to the extent they maintain that statutes of limitation are a form of penal legislation subject to ex post facto protection even where retroactive expansion of the statutory period occurs. We agree.

■ The ban on ex post facto legislation[15] stems from the excesses of colonial rulers in using retrospective legislation as a means of political warfare and retribution. (*Calder* v. *Bull* (1798) 3 U.S. (3 Dall.) 386, 388-389 [1 L.Ed. 648, 649-650] (opn. of Chase, J.) (*Calder*); see Fellman, The Defendant's Rights Today (1976) p. 99.) It ensures the citizenry has "fair warning" of the conduct proscribed by law and of the penalties imposed for violating those proscriptions. (*Weaver* v. *Graham, supra*, 450 U.S. 24, 28 [101 S.Ct. 960, 963-964]; *Marks* v. *United States* (1977) 430 U.S. 188, 191 [97 S.Ct. 990, 992-993, 51 L.Ed.2d 260].) In this way, individuals are free to act in reliance on the law without fear that their conduct will be made punishable in a "vindictive" or "arbitrary" fashion after it has occurred. (*Weaver* v. *Graham, supra*, 450 U.S. at p. 29 [101 S.Ct. at pp. 963-964].)

Early in the nation's history, the United States Supreme Court decided that the ex post facto clause applies only to criminal legislation as opposed to statutes which retroactively affect property, contract, or other interests protected in civil proceedings. (*Calder, supra*, 3 U.S. (3 Dall.) 386, 390-392

---

[15]The United States Constitution prohibits Congress (art. I, § 9) and the states (art. I, § 10) from "pass[ing]" any "ex post facto law." The California Constitution contains a similar provision (art. I, § 9). We have consistently interpreted the state ex post facto clause no differently from its federal counterparts, viewing United States Supreme Court cases as persuasive authority on the subject. (*People* v. *Grant* (1999) 20 Cal.4th 150, 158 [83 Cal.Rptr.2d 295, 973 P.2d 72]; *Hubbart* v. *Superior Court* (1999) 19 Cal.4th 1138, 1171 [81 Cal.Rptr.2d 492, 969 P.2d 584]; *People* v. *Snook* (1997) 16 Cal.4th 1210, 1220 [69 Cal.Rptr.2d 615, 947 P.2d 808]; *People* v. *Helms* (1997) 15 Cal.4th 608, 614 [63 Cal.Rptr.2d 620, 936 P.2d 1230]; *People* v. *McVickers* (1992) 4 Cal.4th 81, 84 [13 Cal.Rptr.2d 850, 840 P.2d 955]; *Tapia* v. *Superior Court, supra*, 53 Cal.3d 282, 295-297.) Apparently because such symmetry exists, defendant has framed his ex post facto challenge to section 803(g) in terms of both the federal and state Constitutions at every stage of the proceedings. For simplicity's sake, this opinion will refer to the applicable ex post facto provisions as a singular item.

[1 L.Ed. 648, 650-651] (opn. of Chase, J.); 396-397 [1 L.Ed. at pp. 652-653] (opn. of Paterson, J.), 399-400 [1 L.Ed. at pp. 653-654] (opn. of Iredell, J.).) Moreover, in keeping with the original purpose of the framers of the Constitution, only certain criminal legislation is subject to ex post facto protection. (*Beazell* v. *Ohio* (1925) 269 U.S. 167, 169-171 [46 S.Ct. 68, 68-69, 70 L.Ed. 216] (*Beazell*); *Calder, supra*, 3 U.S. (3 Dall.) at p. 390 [1 L.Ed. at p. 650] (opn. of Chase, J.).)

According to *Beazell*, which summarized Justice Chase's definition of ex post facto laws in *Calder*, "any statute which punishes as a crime an act previously committed, *which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed,* is prohibited as *ex post facto.* The constitutional prohibition and the judicial interpretation of it rest upon the notion that laws, whatever their form, which purport to make innocent acts criminal after the event, or to aggravate an offense, are harsh and oppressive, and that *the criminal quality attributable to an act, either by the legal definition of the offense or by the nature or amount of the punishment imposed for its commission,* should not be altered by legislative enactment, after the fact, to the disadvantage of the accused." (*Beazell, supra*, 269 U.S. 167, 169-170 [46 S.Ct. 68, 68-69], italics added.)[16]

More recently, in *Collins, supra*, 497 U.S. 37, 39-40 [110 S.Ct. 2715, 2717-2718], a convicted sex offender challenged, as ex post facto, postcrime legislation that allowed a state court to summarily correct an unauthorized

---

[16]The foregoing excerpt from *Beazell, supra*, 269 U.S. at pages 169-170 [46 S.Ct. at pages 68-69], omits from Justice Chase's definition of ex post facto laws in *Calder* any postcrime alteration in "the legal rules of evidence, [that] receives less, or different testimony, than the law required at the time of the commission of the offence, in order to convict the offender." (3 U.S. (3 Dall.) 386, 390 [1 L.Ed. 648, 650].) As we explain above in the text, the high court approved *Beazell*'s formulation of the ex post facto doctrine in *Collins, supra*, 497 U.S. 37, 43 [110 S.Ct. 2715, 2719-2720]. In so doing, *Collins* acknowledged the difference between the *Beazell* and *Calder* tests insofar as postcrime evidentiary changes were concerned, and offered the following explanation: "As cases subsequent to *Calder* make clear, [*Calder*] was not intended to prohibit the application of new evidentiary rules in trials for crimes committed before the changes." (*Collins, supra*, 497 U.S. at p. 43, fn. 3 [110 S.Ct. at p. 2719], citing *Hopt* v. *Utah* (1884) 110 U.S. 574, 588-590 [4 S.Ct. 202, 209-210, 28 L.Ed. 262].)
We note the high court recently agreed to review a Texas Court of Appeals decision which relied on *Hopt* v. *Utah, supra*, 110 U.S. 574, to reject an ex post facto challenge to a postcrime statutory change which altered, adversely to the defendant, the evidentiary weight to be placed on testimony by a sexual assault victim, depending upon when the victim first reported the crime. (*Carmell* v. *State* (Tex.App. 1998) 963 S.W.2d 833, 836, cert. granted June 14, 1999, 527 U.S. 1002-1003 [119 S.Ct. 2336, 144 L.Ed.2d 234].) The "outcry statute" at issue in *Carmell*—unlike section 803(g)—does not appear to operate as a statute of limitations governing the time at which criminal charges may be filed.

sentence on review of the judgment in his case, even though he would have been entitled to a new jury trial under the law in existence at the time of his crime. In rejecting the claim, the United States Supreme Court subjected its ex post facto jurisprudence to close scrutiny, reviewing formulations of the principle from *Calder, supra,* 3 U.S. (3 Dall.) 386, through *Beazell, supra,* 269 U.S. 167, and into the late 20th century. This review resulted in wholesale endorsement of "[t]he *Beazell* formulation [as] faithful to our best knowledge of the original understanding of the *Ex Post Facto* Clause." (*Collins, supra,* 497 U.S. at p. 43 [110 S.Ct. at p. 2719].) The "*Beazell* formulation" was then distilled into a concise two-part test for use in *Collins* and future cases: "Legislatures may not retroactively *alter the definition of crimes* or *increase the punishment* for criminal acts." (*Ibid.,* italics added.)

After articulating the controlling standard for resolving ex post facto challenges under the federal Constitution, *Collins* made clear that the two categories of impermissible retroactive legislation—redefining criminal conduct and increasing punishment—are exclusive. This critical point was communicated in several different ways.

First, the two-part definition of ex post facto legislation was repeated throughout *Collins* in almost talismanic form. (497 U.S. at pp. 44 [110 S.Ct. at p. 2723] [the challenged statute "does not alter the definition of the crime of aggravated sexual abuse, of which [the defendant] was convicted, nor does it increase the punishment for which he is eligible as a result of that conviction"], 49 [110 S.Ct. at p. 2723] [approving a case that defined ex post facto laws solely in terms of "altering the definition of an offense or increasing a punishment"], 50 [110 S.Ct. at p. 2723] [disapproving a case that did not define ex post facto laws solely in terms of "alterations in 'the legal definition of the offense' or 'the nature or amount of the punishment imposed for its commission' "].)[17]

Second, the high court criticized language in some of its own decisions defining the ex post facto prohibition more expansively to include any "procedural change" which deprives the defendant of " 'substantial protections' " or " 'substantial personal rights' " existing at the time of the crime.

---

[17]The high court has closely adhered to *Collins*'s two-prong formula in subsequent cases. (*Lynce* v. *Mathis* (1997) 519 U.S. 433, 441 [117 S.Ct. 891, 896, 137 L.Ed.2d 63] [approving *Collins* and explaining it prevents lawmakers from retroactively "altering the definition of criminal conduct or increasing the punishment for the crime"]; *California Dept. of Corrections* v. *Morales* (1995) 514 U.S. 499, 504 [115 S.Ct. 1597, 1600-1601, 131 L.Ed.2d 588] [approving *Collins*], 506-507, fn. 3 [115 S.Ct. at p. 1602] [explaining that "after *Collins,* the focus of the *ex post facto* inquiry is not on whether a legislative change produces some ambiguous sort of 'disadvantage,' . . . but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable"].)

(*Collins, supra*, 497 U.S. at p. 45 [110 S.Ct. at pp. 2720-2721].) *Collins* explained that such language was misleading because, whether a retroactive criminal statute is deemed procedural or substantive, it contravenes the ex post facto clause only if it redefines criminal conduct or aggravates punishment. (*Id.*, at pp. 45-46 [110 S.Ct. at pp. 2720-2721].) *Collins* also expressly overruled two prior decisions that used the ex post facto clause to invalidate state statutes which " ' "alter[ed] the situation of a party to his disadvantage" ' " (*id.*, at p. 47 [110 S.Ct. at pp. 2721]), but which fell into neither of the two prohibited categories. (*Id.* at pp. 47-52 [110 S.Ct. at pp. 2721-2724], overruling *Kring* v. *Missouri* (1883) 107 U.S. 221 [2 S.Ct. 443, 27 L.Ed. 506] [postcrime change in law prevented capital defendant from asserting on retrial that he had been acquitted of first degree murder based on prior guilty plea to lesser offense of second degree murder]; *Thompson* v. *Utah* (1898) 170 U.S. 343 [18 S.Ct. 620, 42 L.Ed. 1061] [postcrime reduction in the size of criminal juries].)

Finally, *Collins, supra*, 497 U.S. 37, clarified that language in *Beazell, supra*, 269 U.S. 167, 169 [46 S.Ct. 68, 68], prohibiting postcrime deprivations of "any defense available according to law at the time when the act was committed," should not be misread as creating a separate or third category of impermissible ex post facto legislation. According to *Collins, supra*, 497 U.S. at page 50 [110 S.Ct. at page 2723], the quoted phrase "was linked [in *Beazell, supra*, 269 U.S. at pages 169-170 [46 S.Ct. at pages 68-69]] to the prohibition on alterations in 'the legal definition of the offense' or 'the nature or amount of the punishment imposed for its commission.' " In other words, the only "defense[s]" that cannot be restricted or withdrawn for ex post facto purposes are those bearing on the "definition" or "elements" of the charged crime, or involving "an excuse or justification for the conduct underlying such a charge." (*Collins, supra*, 497 U.S. at p. 50 [110 S.Ct. at p. 2723].)[18]

A statutory change in the legal effect of the postcrime passage of time does not implicate criminal conduct or punishment as required by *Collins,*

---

[18]To illustrate this principle, *Collins, supra*, 497 U.S. 37, 49 [110 S.Ct. 2715, 2723], used the facts in *United States* v. *Hall* (C.C.D.Pa. 1809) 26 F.Cas. 84 (No. 15, 285): "In *Hall*, a vessel owner was sued by the United States for forfeiture of an embargo bond obliging him to deliver certain cargo to Portland, Me. As a legal excuse, the defendant argued that a severe storm had disabled his vessel and forced him to land in Puerto Rico, where he was forced by the Puerto Rican government to sell the cargo. In dicta, Justice Washington hypothesized that, according to the law in effect at the time *Hall* forfeited the cargo, an 'unavoidable accident' was an affirmative defense to a charge of failing to deliver cargo. His jury instruction then explained that a subsequent law imposing an additional requirement for the affirmative defense—that the vessel or cargo actually *be lost at sea* as a result of the unavoidable accident—would deprive Hall of a defense of his actions available at the time he sold the cargo and thus be an invalid *ex post facto* law. [¶] This analysis is consistent with the *Beazell* framework. A law that abolishes an affirmative defense of justification or excuse contravenes Art. I, § 10, because it expands the scope of a criminal prohibition after the act is done."

*supra*, 497 U.S. 37. As explained more fully in conjunction with defendant's due process claim, *post*, statutes of limitation are an optional form of "legislative grace," reflecting a pragmatic determination that the interests of the state are best served by forgoing prosecution in some cases.[19] Such laws, including California's criminal statutes of limitation, generally seek to protect both the judicial system and the defendant from the burden of litigating claims after a specified time has passed, and after relevant evidence is presumably less reliable or no longer available.[20] As indicated by the authorities cited in footnotes 19 and 20, *ante*, the statute of limitations is often said to work in an "arbitrary" or "mechanical" fashion to insulate from prosecution even those individuals whose conduct otherwise satisfied all elements of a penal statute, and who were otherwise subject to criminal punishment, at the time the conduct occurred.

 Here, for instance, the definition of the charged crime has not changed over time. No material revision in the language of section 288(a) has occurred between 1984, when the crime allegedly took place, and the present time. Indeed, section 288 was enacted in 1901, and the elements

[19](*Chase Securities Corp.* v. *Donaldson* (1945) 325 U.S. 304, 314 [65 S.Ct. 1137, 1142, 89 L.Ed. 1628] (*Chase*) ["Statutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients, rather than principles. They are practical and pragmatic devices to spare the courts from litigation of stale claims, and the citizen from being put to his defense after memories have faded, witnesses have died or disappeared, and evidence has been lost. [Citation.] They are by definition arbitrary, and their operation does not discriminate between the just and the unjust claim, or the voidable and unavoidable delay. They have come into the law not through the judicial process but through legislation. [Fn. omitted.] They represent a public policy about the privilege to litigate. Their shelter has never been regarded as what now is called a 'fundamental' right or what used to be called a 'natural' right of the individual. He may, of course, have the protection of the policy while it exists, but the history of pleas of limitation shows them to be good only by legislative grace and to be subject to a relatively large degree of legislative control"]; see 21 Am.Jur.2d, Criminal Law, § 291, pp. 346-347 [describing limitation periods as creatures of statute and noting that, in their absence, a "prosecution may be instituted at any time, however long after commission of the crime"]; *United States* v. *Marion* (1971) 404 U.S. 307, 322, fn. 14 [92 S.Ct. 455, 464-465, 30 L.Ed.2d 468] (*Marion*) [noting that the policies behind civil and criminal statutes of limitation are "similar," and approving the policy statement in *Chase*, *supra*, 325 U.S. 304, 314 [65 S.Ct. 1137, 1142]].)

[20](Statutes of Limitation, *supra*, 17 Cal. Law Revision Com. Rep. at p. 309 ["the statute of limitations is to a large extent a societal determination that after passage of a sufficient length of time, staleness is presumed . . . . [It] acts mechanically to protect a person from further prosecution, regardless of the facts and circumstances of the particular case"]; 2 Robinson, Criminal Law Defenses (1984) Nonexculpatory Defenses, § 202(b), p. 465 [describing the statute of limitations as "a nonexculpatory defense" which "bars conviction of an offender even though he may be entirely culpable," and which can "frustrate the community's sense of what justice demands"]; see *Cowan* v. *Superior Court* (1996) 14 Cal.4th 367, 372-374 [58 Cal.Rptr.2d 458, 926 P.2d 438] [concluding that criminal statutes of limitations do not implicate "fundamental" subject matter jurisdiction, and allowing defendants to affirmatively waive the issue in order to plead guilty to, or receive instructions on, a time-barred lesser offense].)

defining criminal conduct under what is now subdivision (a) have remained the same for decades. (*People* v. *Martinez* (1995) 11 Cal.4th 434, 442-446 & fns. 5, 7, 8 [45 Cal.Rptr.2d 905, 903 P.2d 1037] (*Martinez*); *People* v. *Scott* (1994) 9 Cal.4th 331, 342-343 & fn. 5 [36 Cal.Rptr.2d 627, 885 P.2d 1040].) The crime has long involved " 'any touching' of an underage child accomplished with the intent of arousing the sexual desires of either the perpetrator or the child." (*Martinez, supra,* 11 Cal.4th at p. 452.)[21]

There also has been no relevant change in the punishment prescribed by section 288(a). Now, as in 1984, a base term of imprisonment of "three, six, or eight years" may be imposed where conviction under the statute occurs. (*Ibid.*) Given the unchanged nature of section 288(a) since the time defendant allegedly molested Jessica F., we see no basis on which to conclude that the limitations period in section 803(g) "alter[s] the definition of the [charged] crime" or "increase[s] the [applicable] punishment." (*Collins, supra,* 497 U.S. 37, 44 [110 S.Ct. 2715, 2720-2721].)

Nevertheless, defendant insists section 803(g) impermissibly deprives him of a " 'defense available according to law at the time when the act was committed.' " (*Collins, supra,* 497 U.S. 37, 42 [110 S.Ct. 2715, 2719], quoting *Beazell, supra,* 269 U.S. 167, 169 [46 S.Ct. 68, 68].) Defendant observes that when the crime allegedly occurred, section 800 provided immunity from prosecution in the event prosecution did not commence within six years of the charged crime. Alluding to reasoning used by the instant Court of Appeal and other state court cases on which it relied, defendant insists expiration of the limitations period in section 800 provided

---

[21]In *Martinez, supra,* 11 Cal.4th 434, the defendant relied on a hypertechnical reading of the statute to argue that, in addition to sexual intent, conviction under section 288(a) requires commission of an inherently "lewd" or intimate act, such as contact involving the genitals, buttocks, or female breast. *Martinez* rejected the claim based on the long-standing judicial view that "the lewd character of an activity cannot logically be determined separate and apart from the perpetrator's intent," and that "the only way to determine whether a particular touching is permitted or prohibited is by reference to the actor's intent as inferred from all the circumstances." (11 Cal.4th at p. 450.) *Martinez* also relied on the Legislature's obvious interest in protecting children from a range of sexually motivated contact broader than that made criminal elsewhere under the statutory scheme. (*Id.,* at pp. 442-447, 449-452.) *Martinez* described the considerations relevant to determining whether a statutory violation has occurred in greater detail as follows: "The trier of fact must find a union of act and sexual intent (see § 20), and such intent must be inferred from all the circumstances beyond a reasonable doubt. A touching which might appear sexual in context because of the identity of the perpetrator, the nature of the touching, or the absence of an innocent explanation, is more likely to produce a finding that the act was indeed committed for a sexual purpose and constituted a violation of the statute. On the other hand, if the trier of fact *is* persuaded beyond a reasonable doubt, from all the circumstances, that the touching of a child *was* sexually motivated, nothing in the language, history, or purpose of section 288 indicates that the touching should escape punishment simply because it might not be considered a means of sexual gratification by members of the mainstream population." (11 Cal.4th at p. 452.)

him with a complete defense to criminal liability and punishment which could not later be withdrawn under section 803(g) consistent with ex post facto guarantees. (See *Bunn, supra,* 53 Cal.App.4th 227, 232-239; *Lynch, supra,* 33 Cal.App.4th 1223, 1226-1228.)

We disagree. As we have explained, the ex post facto clause is concerned exclusively with "the criminal quality *attributable to an act*" as evidenced "either by the legal definition of the offense or by the nature or amount of the punishment" at the time it occurs. (*Beazell, supra,* 269 U.S. 167, 170 [46 S.Ct. 68, 68-69], italics added.) The primary purpose of the constitutional guarantee is to ensure that the consequences of a particular *course of conduct* can be meaningfully assessed in advance, without fear that the rules of criminality and punishment will later change. (*Weaver* v. *Graham, supra,* 450 U.S. 24, 28-29 [101 S.Ct. 960, 963-964]; *Marks* v. *United States, supra,* 430 U.S. 188, 191 [97 S.Ct. 990, 992-993].) For this reason, *Collins* made clear that ex post facto protection extends only to "defense[s]" bearing on the "definition" and "elements" of proscribed *conduct*, or involving "excuse or justification" for its *commission*. (497 U.S. 37, 50 [110 S.Ct. 2715, 2723].)

Application of section 803(g) to defendant's case in no way violates these principles. The section makes no change in the act or intent elements which the prosecution must prove beyond a reasonable doubt to obtain a conviction under section 288(a), the circumstances which can be used by the defendant to show no lewd touching of an underage child occurred under section 288(a), or the range of state prison sentences available as punishment under section 288(a). Section 803(g) simply provides that where the victim has waited to report a violation of section 288(a) or other enumerated sex crime to a law enforcement agency, and where the limitations period has otherwise expired, there is an additional one-year period in which a criminal complaint may be filed after a qualifying report is made. Section 803(g) regulates the time at which child sexual abuse *defined and punished elsewhere in the Penal Code* may be charged, but it does not impermissibly withdraw a "defense" as that term of art is used for ex post facto purposes in *Collins, supra,* 497 U.S. 37, 50 [110 S.Ct. 2715, 2723].[22]

In a related vein, defendant argues that even if the state can file charges based on a postcrime "extension" of the statutory period that takes effect

---

[22]We also disagree with suggestions in *Bunn, supra,* 53 Cal.App.4th 227, 233-236, and *Lynch, supra,* 33 Cal.App.4th 1223, 1226-1228, that the manner in which California courts have characterized criminal statutes of limitation outside the ex post facto context is relevant to the validity of section 803(g) under *Collins, supra,* 497 U.S. 37. (See *Cowan* v. *Superior Court, supra,* 14 Cal.4th 367, 371-374 [describing and disavowing state court cases that indicated trial court has no subject matter jurisdiction over a time-barred criminal offense, and allowing defendants to affirmatively waive the statute of limitations for their own benefit].) Whatever its nature for various state law purposes, either before or after *Cowan,* the statute of

before the statute of limitations in existence at the time of the crime expires, ex post facto principles do not permit postcrime "revivals" of criminal prosecutions that were time-barred before the new longer statute of limitations was enacted. Under this view, since the six-year period set by section 800 had ostensibly run before section 803(g) was enacted and before a complaint charging lewd conduct was filed against defendant, the People could not subsequently use section 803(g) to prosecute defendant in a timely fashion consistent with ex post facto guarantees. Like the Court of Appeal in this case, defendant insists such a conclusion is dictated by *Falter, supra,* 23 F.2d 420, and its progeny. We disagree.

In *Falter,* three defendants were jointly indicted, tried, and convicted for conspiracy to defraud the United States by means of a protracted scheme to buy surplus military goods at fraudulently induced, below-market prices. Writing for a unanimous panel of the Second Circuit Court of Appeals, Judge Learned Hand addressed the defendants' main claim on appeal at length, and found sufficient evidence of fraudulent activity within the meaning of the federal statute under which charges had been filed. (23 F.2d at pp. 423-425.) Towards the end of the opinion, a series of other legal attacks on the judgment were rejected in relatively succinct terms. Pertinent here is the defendants' claim in *Falter* that prosecution of their conspiracy was barred under the applicable statute of limitations and the ex post facto clause of the federal Constitution.

On the latter issue, the *Falter* court observed that at the time the fraudulent scheme occurred, in late 1919 through early 1920, the applicable statute of limitations permitted commencement of the prosecution within three years of the crime. In November 1921, before the three-year period expired with respect to defendants' crime, the statute of limitations was amended to allow prosecution within a six-year period. (*Falter, supra,* 23 F.2d at p. 425.)

Without describing the precise nature of the constitutional claim, *Falter* rejected defendants' suggestion that any adverse "change [in the statute of limitations] after the commission of the crime, and while the [original] time [period] is running," constitutes a violation of the ex post facto clause. (*Falter, supra,* 23 F.2d p. 425.) The court cited language in *Beazell, supra,* 269 U.S. 167, 170 [46 S.Ct. 68, 68-69], indicating that the ex post facto clause only protects against unfavorable retroactive changes in the

---

limitations is not an "element" of the offense insofar as the "definition" of criminal conduct is concerned. (*Collins, supra,* 497 U.S. at p. 50 [110 S.Ct. 2715, 2723].) Thus, to the extent section 803(g) alters the statute of limitations applicable to a previously committed crime, it does not implicate the strict "crime and punishment" theory embraced for ex post facto purposes in *Collins.*

definitions of crime and punishment, and found nothing " 'harsh and oppressive' " in allowing the state to benefit from a postcrime increase in the applicable statutory period. (*Falter, supra*, at p. 425.) *Falter* noted that a 19th century New Jersey court had reached a different result where the statute of limitations existing at the time of the crime "had once run" before an amendment expanding the period was enacted. (*Ibid.*, citing *Moore* v. *State* (E. & A. 1881) 43 N.J.L. 203.) As emphasized by defendant in the present case, *Falter* then purported to distinguish, in colorful terms, between permissible postcrime "extensions" of a criminal statute of limitations and impermissible postcrime "revivals."[23]

Defendant recognizes that no decision of the United States Supreme Court or this court has used the foregoing passage from *Falter* to decide an ex post facto question of the sort raised here. Hence, we are not compelled by *Falter* to find a constitutional violation insofar as section 803(g) applies, on its face, to child molestation cases in which section 800 or 801 had expired and no criminal charges were filed before January 1, 1994. On the other hand, defendant asks that we embrace the principles expressed by *Falter* in footnote 23, *ante*, and adopt such reasoning as our own. Defendant correctly notes that many federal and state courts have cited the relevant passage with approval over the years, as discussed further below.

However, *Falter, supra*, 23 F.2d 420, and its progeny are not persuasive authority for invalidating section 803(g) on ex post facto grounds. Preliminarily, the distinction drawn in *Falter* between permissible and impermissible postcrime expansions in the statute of limitations was unnecessary to the decision in that case. There was no question in *Falter* that the three-year limitations period in existence at the time of the conspiracy "had not run" at the time the statute was amended and the new six-year period took effect. (23 F.2d at p. 425.) At most, the defendants could be understood as raising an ex post facto challenge based on a postcrime statutory change that increased the time for filing conspiracy charges "while the [three-year] time [period] is running." (*Ibid.*) The *Falter* court correctly rejected such a constitutional challenge based on principles set forth in *Beazell, supra*, 269 U.S. 167. Any question whether the result might have been different if the original limitations period "had once run" prior to amendment of the statute was not pending before the court in *Falter, supra*, 23 F.2d at page 425.

---

[23]"Certainly it is one thing to revive a prosecution already dead, and another to give it a longer lease of life. The question turns upon how much violence is done to our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest. But, while the chase is on, it does not shock us to have it extended beyond the time first set, or, if it does, the stake forgives it." (*Falter, supra*, 23 F.2d at pp. 425-426.)

However, the primary reason we find no ex post facto violation here based on dictum in *Falter,* or on any case cited therein, is that such a result would be inconsistent with *Beazell, supra,* 269 U.S. 167, 169-170 [46 S.Ct. 68, 68-69], and its modern counterpart, *Collins, supra,* 497 U.S. 37, 43 [110 S.Ct. 2715, 2719-2720]. Statutes regulating the time at which a future criminal prosecution may be filed do not implicate the manner in which criminal conduct is defined and punished at the time it occurs—the sole concern of the ex post facto clause. Thus, contrary to what *Falter, supra,* 23 F.2d 420, 425, suggested, it makes no difference for ex post facto purposes whether a postcrime change in the statute of limitations "revive[s] a prosecution already dead" or "give[s] it a longer lease of life." In neither case does the new expanded statute of limitations "retroactively alter the definition of crimes or increase the punishment for criminal acts" within the meaning of *Collins, supra,* 497 U.S. 37, 43 [110 S.Ct. 2715, 2719]. ██ ██ (See *Retroactivity and Childhood Sexual Abuse, supra,* 28 Pacific L.J. 796, 802 [section 803(g) survives ex post facto challenge where prosecution was time-barred before statute was enacted]; *Time's No Bar to Revival, supra,* 22 Ind. L.Rev. 989, 1009-1017 [same general conclusion regarding retroactive expansion of criminal statutes of limitation].)[24]

 We recognize that *Falter, supra,* 23 F.2d 420, 425-426, has been cited with approval by courts in other jurisdictions and in this state, often in cases involving statutes increasing the time for prosecuting child sexual abuse based on acts committed before the statutory change. As noted by the People, however, the vast majority of these decisions *reject* an ex post facto claim under circumstances similar to those at issue in *Falter*—unfavorable postcrime change in the statute of limitations involving defendants against

---

[24]As noted above, the suggestion in *Falter, supra,* 23 F.2d 420, 426, that ex post facto problems arise from the "unfair[ness]" and "dishonest[y]" of reviving an already expired limitations period does not comport with the more technical view of ex post facto protection recently confirmed in *Collins, supra,* 497 U.S. 37. But even on *Falter*'s own terms, it is not clear the court in that case would have found unacceptable unfairness with respect to section 803(g). Application of a revived statute of limitations to the special case of child sexual abuse was motivated by strong and reasonable policy considerations. Specifically, in first enacting section 803(g), the Legislature expressed concern that reliable accusations of child sexual abuse, including those accompanied by an admission of guilt, were not prosecuted because the victim—who may "now [be] an adult"—had waited to report the crime until after the existing statute of limitations had expired. (Assem. Com. on Public Safety, Analysis of Assem. Bill No. 290 (1993-1994 Reg. Sess.) Apr. 9, 1993, p. 2.) The Legislature recognized that young victims often have difficulty remembering and reporting traumatic abuse at the hands of adults, particularly adults who breach positions of trust, and was obviously concerned that such serious crimes would otherwise go unpunished. As we discuss later in the opinion, the policies underlying section 803(g) strongly influence our conclusion that section 803(g) does not violate due process principles.

whom the limitations period existing at the time of the crime had not run when the amendment took effect.[25]

The conclusion reached by the cases cited in footnote 25, *ante*, is not inconsistent with our view that application of section 803(g) to defendants whose prosecutions were time-barred before January 1, 1994, does not offend ex post facto guarantees. Not surprisingly, one of the more recent and thoughtful cases in this group seems to depart from *Falter, supra*, 23 F.2d 420, 425-426, and questions whether *any* retroactive change in the statute of limitations implicates criminal conduct and punishment under *Collins, supra*, 497 U.S. 37.[26]

---

[25](See, e.g., *U.S. v. Grimes* (11th Cir. 1998) 142 F.3d 1342, 1350-1351; *U.S. v. Brechtel* (5th Cir. 1993) 997 F.2d 1108, 1112-1113 & fn. 14; *U.S. v. Taliaferro* (10th Cir. 1992) 979 F.2d 1399, 1402-1403; *U.S. v. Knipp* (6th Cir. 1992) 963 F.2d 839, 842-844; *U.S. v. Madia* (8th Cir. 1992) 955 F.2d 538, 539-540; *Clements v. United States* (9th Cir. 1959) 266 F.2d 397, 398-399 & fn. 4; *U.S. v. Morgan* (D.Conn. 1994) 845 F.Supp. 934, 942-943; *State v. Hirsch* (1994) 245 Neb. 31 [511 N.W.2d 69, 76-78]; *People v. Russo* (1992) 439 Mich. 584 [487 N.W.2d 698, 700-703 & fn. 18]; *State v. O'Neill* (1990) 118 Idaho 244 [796 P.2d 121, 123-124]; *Com. v. Bargeron* (1988) 402 Mass. 589 [524 N.E.2d 829, 830]; *State v. Creekpaum* (Alaska 1988) 753 P.2d 1139, 1140-1144 & fn. 7; *State v. Hodgson* (1987) 108 Wn.2d 662 [740 P.2d 848, 850-852]; *State v. Burns* (Minn.Ct.App. 1994) 524 N.W.2d 516, 519-520; *State v. Nagle* (1988) 226 N.J. Super. 513 [545 A.2d 182, 184-185]; *People v. Lewis* (1986) 180 Cal.App.3d 816, 822-823 [225 Cal.Rptr. 782]; *People v. Masry* (1986) 179 Cal.App.3d 1149, 1151-1152 [225 Cal.Rptr. 174]; *People v. Sample* (1984) 161 Cal.App.3d 1053, 1057-1058 [208 Cal.Rptr. 318]; *People v. Glowa* (1976) 87 Misc.2d 471 [384 N.Y.S.2d 673, 675-676]; *People v. Eitzen* (1974) 43 Cal.App.3d 253, 265-268 [117 Cal.Rptr. 772]; *People v. Snipe* (1972) 25 Cal.App.3d 742, 746-748 [102 Cal.Rptr. 6, 60 A.L.R.3d 1316]; see also *United States* ex rel. *Massarella v. Elrod* (7th Cir. 1982) 682 F.2d 688, 689; *United States v. Richardson* (3d Cir. 1975) 512 F.2d 105, 106; *Christmas v. State* (Miss. 1997) 700 So.2d 262, 267-268; *State v. Fiorenzano* (R.I. 1997) 690 A.2d 857, 860-861; *State v. Schultzen* (Iowa 1994) 522 N.W.2d 833, 834-835; *State v. Johnson* (1992) 87 Vt. 344 [612 A.2d 1114, 1115-1116]; *State v. Thill* (N.D. 1991) 468 N.W.2d 643, 647, fn. 8; *State v. Nunn* (1989) 244 Kan. 207 [768 P.2d 268, 277-279].)

[26](*U.S. v. Knipp, supra*, 963 F.2d 839, 843-844 ["Pleading an expired limitations period is certainly a defense in the general sense that it is a defensive measure. More particularly, however, it is a matter in bar of prosecution and as such is distinguishable from a 'pure' defense, which defeats one or more of the elements of the crime. This distinction was noted and strongly reinforced by the Court in [*Collins, supra*, 497 U.S. 37, 50 [110 S.Ct. 2715, 2723], and *Beazell, supra*, 269 U.S. 169-170 [46 S.Ct. 68, 68-69]] . . . . [¶] Thus, 'defense' as used in *Beazell* means a defense related to the definition or elements of the crime. It does not have the much broader meaning assigned to it by defendants, because a plea in bar is not related to the definition of a crime and is not pleaded as a nullification of one or more of its elements or as an excuse or justification for its commission. . . . [¶] . . . [¶] The defensive use of a statute of limitations is a procedural defense in the nature of a plea in bar. Because it has nothing to do with the internal structure of the crime or its elements, it is not the kind of 'defense' that the Supreme Court was referring to in *Beazell* when it stated that the Ex Post Facto Clause was violated if a defendant was later deprived of a defense that had been available to him at the time he committed the crime in question."].)

It appears that few courts have relied on the reasoning of *Falter, supra,* 23 F.2d 420, 425-426, to decide the precise question raised by defendant here, namely, whether federal ex post facto principles bar the Legislature from increasing the time for filing criminal charges where the defendant achieved statutory repose before the limitations period was so changed. Our research discloses that courts in no fewer than five states have found a constitutional violation under such circumstances. In particular, this result has been reached in at least nine opinions—five from other states,[27] and four from California,[28] including two cases involving section 803(g) and followed by the Court of Appeal here.

However, most of these decisions predate *Collins, supra,* 497 U.S. 37, while others do not follow *Collins* insofar as it extends ex post facto protection only to laws which retroactively redefine crimes or increase punishment. Because the cases cited in footnotes 27 and 28, *ante,* are based on an impermissibly broad understanding of ex post facto principles, they provide no meaningful support for defendant's claim.

We conclude that section 803(g) is not an ex post facto law insofar as it applies, on its face, to the instant case. The following decisions are disapproved to the extent they are inconsistent with this view: *Bunn, supra,* 53 Cal.App.4th 227; *Lynch, supra,* 33 Cal.App.4th 1223; *People v. Gordon, supra,* 165 Cal.App.3d 839; *Sobiek v. Superior Court, supra,* 28 Cal.App.3d 846.

## V. Due Process Claim

■ Defendant argues here, as below, that once the six-year period in section 800 had expired as to the charged crime, he could not be prosecuted under section 803(g), as thereafter adopted, consistent with federal due process guarantees. (U.S. Const., 5th & 14th Amends.) He alludes to substantive due process principles applied in civil cases to ensure that "vested"

---

[27](*Com.* v. *Rocheleau* (1989) 404 Mass. 129 [533 N.E.2d 1333, 1334] [finding ex post facto violation apparently as a matter of both federal and state constitutional law]; *People* v. *Shedd* (Colo. 1985) 702 P.2d 267, 268 [same]; *State* v. *Cookman* (1996) 324 Or. 19 [920 P.2d 1086, 1090-1094] [finding ex post facto violation under the state constitution and using federal ex post facto principles as persuasive authority]; *Com.* v. *Thek* (1988) 376 Pa.Super. 390 [546 A.2d 83, 88-89] [same], overruled on other grounds in *Com.* v. *Garcia* (1991) 403 Pa.Super. 280 [588 A.2d 951, 955, fn. 9]; *Com.* v. *Guimento* (1985) 341 Pa.Super. 95 [491 A.2d 166, 167-169] [same].)

[28](*Bunn, supra,* 53 Cal.App.4th 227, 232-239; *Lynch, supra,* 33 Cal.App.4th 1223, 1226-1228; *People* v. *Gordon* (1985) 165 Cal.App.3d 839, 849-852 [212 Cal.Rptr. 174], disapproved on other grounds in *People* v. *Lopez* (1998) 19 Cal.4th 282, 292 [79 Cal.Rptr.2d 195, 965 P.2d 713]; *Sobiek* v. *Superior Court* (1972) 28 Cal.App.3d 846, 848-850 [106 Cal.Rptr. 516].)

property rights are not retroactively impaired in an irrational or arbitrary manner. (See generally, *In re Marriage of Bouquet* (1976) 16 Cal.3d 583, 591-592 [128 Cal.Rptr. 427, 546 P.2d 1371].) In defendant's view, section 803(g) deprives criminal defendants who had achieved statutory repose before January 1, 1994, of an analogous, constitutionally protected interest.

The People vigorously disagree. They observe that the United States Supreme Court has never acknowledged a criminal defendant's fundamental interest, protected by the due process clauses, in retaining the benefit of an already expired statute of limitations against subsequent attempts to amend the time at which charges may be filed. According to the People, no decision of *any* court supports defendant's contrary view.

We agree with the People that defendant is essentially asking this court to invalidate section 803(g) by recognizing a new federal constitutional right based on the assumption that criminal defendants have a fundamental "right to repose," once such repose is achieved under the statute of limitations then in effect. For reasons we explain, the high court all but rejected this view in *Chase, supra*, 325 U.S. 304. Though defendant virtually ignores this significant case, it supports our decision to reject his claim.

In *Chase*, the plaintiff filed suit in Minnesota state court in 1937 to recover the cost of unregistered securities that had allegedly been sold in 1929 in violation of Minnesota statutory and common law. The defendant, a corporation, argued in the trial court that the action was time-barred, and apparently asserted, among other things, the six-year statute of limitations generally applicable to actions founded upon liabilities created by statute. The plaintiff disagreed, claiming that the defendant had withdrawn from the state in 1931 and that the running of the statutory period had been suspended during its absence. The trial court rejected the statute of limitations claim on the ground urged by the plaintiff, found an illegal sale of securities under the regulatory scheme, and did not rule on the common law claims. Judgment was entered in the plaintiff's favor.

On appeal, the Minnesota Supreme Court determined that the statute of limitations had not been tolled due to the defendant's absence from the state. The judgment was reversed and, in January 1941, the case was remanded for further proceedings not inconsistent with the latter decision. (*Chase, supra*, 325 U.S. at p. 306 [65 S.Ct. at pp. 1138-1139].)

While the case was pending in the trial court, the Minnesota Legislature amended the regulatory scheme and included, for the first time, a specific statute of limitations applicable to actions arising thereunder. The effect of

the statutory change, which became operative July 1941, was "to abolish any defense that [the defendant] might otherwise have made under the [more generalized] statutes of limitation" which had previously governed the challenged sale or which had been applied in its favor in the case. (*Chase, supra*, 325 U.S. at p. 308 [65 S.Ct. at p. 1139].)

On remand in the trial court, the defendant argued, among other things, that the new statute of limitations did not apply and that the plaintiff's action was time-barred under prior law. The defendant argued alternatively that to the extent amendment of the regulatory scheme had retroactively expanded the applicable limitations period or withdrawn a statute of limitations bar it had previously been entitled to assert on its behalf, the defendant was deprived of its property in violation of the due process clause of the Fourteenth Amendment. The foregoing claims were rejected by the trial court, which again entered judgment in the plaintiff's favor. The Minnesota Supreme Court affirmed. (*Chase, supra*, 325 U.S. at pp. 308-309 [65 S.Ct. at pp. 1139-1140].)

The defendant renewed its due process attack on the new statute of limitations in the United States Supreme Court. After noting that "substantial federal questions" had been raised, the court rejected the claim. (*Chase, supra*, 325 U.S. at p. 311 [65 S.Ct. at pp. 1140-1141].)

*Chase* began by summarizing the holding of *Campbell* v. *Holt* (1885) 115 U.S. 620 [6 S.Ct. 209, 29 L.Ed. 483] (*Campbell*), the decision on which the Minnesota Supreme Court had relied in rejecting the defendant's federal constitutional claim. "In [*Campbell*], this Court held that where lapse of time has not invested a party with title to real or personal property, a state legislature, consistently with the Fourteenth Amendment, may repeal or extend a statute of limitations, even after right of action is barred thereby, restore to the plaintiff his remedy, and divest the defendant of the statutory bar." (*Chase, supra*, 325 U.S. 304, 311-312 [65 S.Ct. 1137, 1141].) The *Chase* court recognized that "some state courts have not followed [the foregoing rule] in construing provisions of their constitutions similar to the due process clause." (*Id.*, at p. 312 [65 S.Ct. at p. 1141].) *Chase* also acknowledged "some criticisms" of *Campbell, supra*, 115 U.S. 620, "in legal literature." (325 U.S. at p. 313 [65 S.Ct. at p. 1142].)

Nevertheless, the court refused to overrule *Campbell, supra*, 115 U.S. 620, or otherwise depart from its "essential holding" that federal due process principles do not preclude the Legislature from making retroactive changes in the applicable limitations period detrimental to the defense. (*Chase, supra*, 325 U.S. 304, 315 [65 S.Ct. 1137, 1143].) In so doing, the court declined to

reexamine or "settle" the ancient debate underlying *Campbell* as to whether limitation periods are prescriptive in nature such that their expiration destroys the attendant legal "right," or whether they merely affect the "remedy" for enforcing such a right. (*Chase, supra*, at p. 313 [65 S.Ct. at p. 1142].) Instead, *Chase* relied on a more pragmatic view of the statute of limitations that had evolved since *Campbell* was decided, namely, that such laws are instruments of "public policy" existing at the will of the legislature, and that their shelter has never been viewed as a " 'fundamental' right." (*Id.*, at p. 314 [65 S.Ct. at p. 1142].) *Chase* then denied relief to the defendant under the United States Constitution for the following reasons:

"The Fourteenth Amendment does not make an act of state legislation void merely because it has some retrospective operation. What it does forbid is taking of life, liberty or property without due process of law. Some rules of law probably could not be changed retroactively without hardship and oppression, and this whether wise or unwise in their origin. Assuming that statutes of limitation, like other types of legislation, could be so manipulated that their retroactive effects would offend the Constitution, certainly it cannot be said that lifting the bar of a statute of limitation so as to restore a remedy lost through mere lapse of time is *per se* an offense against the Fourteenth Amendment. Nor has the [defendant] pointed out special hardships or oppressive effects which result from lifting the bar in this class of cases with retrospective force. This is not a case where [the defendant's] conduct would have been different if the present rule had been known and the change foreseen. [The defendant] does not say, and could hardly say, that it sold unregistered stock depending upon a statute of limitation for shelter from liability. The nature of the defenses shows that no course of action was undertaken by [the defendant] on the assumption that the old rule would be continued. When the action was commenced, [the defendant] no doubt expected to be able to defend by invoking Minnesota public policy that lapse of time had closed the courts to the case, and its legitimate hopes have been disappointed. But the existence of the policy at the time the action was commenced did not, under the circumstances, give the [defendant] a constitutional right against change of policy before final adjudication. Whatever grievance [the defendant] may have at the change of policy to its disadvantage, it had acquired no immunity from this suit that has become a federal constitutional right." (*Chase, supra*, 325 U.S. at pp. 315-316 [65 S.Ct. at p. 1143].)

The holding of *Chase*—that no constitutionally protected interest arises once a statute of limitations has run, and that such protection can be retroactively withdrawn consistent with due process—has been reaffirmed by the high court in subsequent cases. (See *Plaut* v. *Spendthrift Farm, Inc.*

(1995) 514 U.S. 211, 229 [115 S.Ct. 1447, 1458, 131 L.Ed.2d 328] [noting that statutes of limitation "can be extended, without violating the Due Process Clause, after the cause of the action arose and even after the statute itself has expired"]; *Electrical Workers* v. *Robbins & Myers, Inc.* (1976) 429 U.S. 229, 243 [97 S.Ct. 441, 450, 50 L.Ed.2d 427] [rejecting claim that "Congress was without constitutional power to revive, by enactment, an action which, when filed, is already barred by the running of a limitations period"].)

We see no meaningful basis on which to distinguish the six-year period in section 800 from the statute of limitations discussed in *Chase, supra,* 325 U.S. 304. That this case involves a criminal, rather than a civil, statute of limitations is not such a persuasive distinction. No provision of the United States Constitution explicitly confers upon criminal defendants a "right to repose" by virtue of the length of time between commission of the crime and commencement of the prosecution. (See *Doggett* v. *United States* (1992) 505 U.S. 647, 667-669 [112 S.Ct. 2686, 2699, 120 L.Ed.2d 520] (dis. opn. of Thomas, J.) (*Doggett*) [discussing Sixth Amendment right to speedy trial].) Nor does the federal Constitution itself prescribe a fixed or certain time in which indictment must occur after the crime. ▮▮▮▮▮ (See Adlestein, *Conflict of the Criminal Statute of Limitations With Lesser Offenses at Trial* (1995) 37 Wm. & Mary L.Rev. 199, 250 & fn. 224 (*The Criminal Statute of Limitations*).)[29]

▮▮▮ It is well settled that, aside from *procedural* due process concerns arising under the Fifth Amendment and involving claims of actual prejudice at trial (see discussion, *post*), "the applicable statute of limitations . . . is . . . the primary guarantee against bringing overly stale criminal charges." (*United States* v. *Ewell* (1966) 383 U.S. 116, 122 [86 S.Ct. 773, 777, 15 L.Ed.2d 627]; accord, *United States* v. *Lovasco* (1977) 431 U.S. 783, 789 [97

---

[29]Of course, the Sixth Amendment of the United States Constitution literally guarantees a "speedy" trial to the "accused" once a "criminal prosecution[ ]" is underway. This language has been construed to apply only where the defendant either has been formally and publicly indicted or has been arrested and held to answer on a criminal charge. (*United States* v. *MacDonald* (1982) 456 U.S. 1, 6-7 [102 S.Ct. 1497, 1500-1502, 71 L.Ed.2d 696]; *Marion, supra,* 404 U.S. 307, 313-315, 320-323 [92 S.Ct. 455, 459-461, 463-464].) Insofar as it reduces the risk of excessive delay between accusation and trial, the speedy trial guarantee helps protect against oppressive pretrial incarceration, anxiety and concern, and impairment of the ability to defend against the charge. (*Doggett, supra,* 505 U.S. 647, 654-655 [112 S.Ct. 2686, 2691-2692]; *Marion, supra,* 404 U.S. at p. 320 [92 S.Ct. at p. 463].) Courts generally balance four factors "on an *ad hoc* basis" to determine whether a speedy trial has been denied in a particular case, once the right has attached: length of any delay, reasons for the delay, assertion of the right by the defense, and prejudice to the defense. (*Barker* v. *Wingo* (1972) 407 U.S. 514, 530 [92 S.Ct. 2182, 2191-2192, 33 L.Ed.2d 101]; accord, *Doggett, supra,* 505 U.S. at p. 651 [112 S.Ct. at p. 2690].)

S.Ct. 2044, 2048, 52 L.Ed.2d 752] (*Lovasco*); see *United States* v. *Gouveia* (1984) 467 U.S. 180, 192 [104 S.Ct. 2292, 2299-2300, 81 L.Ed.2d 146]; *United States* v. *MacDonald, supra,* 456 U.S. 1, 7-8 [102 S.Ct. 1497, 1501-1502]; *Marion, supra,* 404 U.S. 307, 322 [92 S.Ct. 455, 464].) Such statutes provide a measure of predictability "by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." (*Marion, supra,* 404 U.S. at p. 322 [92 S.Ct. at p. 464], fn. omitted.)

However, criminal statutes of limitation are no less an act of "policy" or "grace" than their counterparts in civil cases. (*Chase, supra,* 325 U.S. 304, 314 [65 S.Ct. 1137, 1142].) The high court has made clear that such laws reflect "legislative assessments of relative interests of the State and the defendant in administering and receiving justice." (*Marion, supra,* 404 U.S. 307, 322 [92 S.Ct. 455, 464].) As in civil cases, such interests include both societal repose and the protection of individuals whose means of defense might be impaired by the passage of time. (*Ibid.*; see *Cowan* v. *Superior Court, supra,* 14 Cal.4th 367, 374-375 [identifying the "policy considerations" underlying California's criminal statutes of limitation and finding none to "prevent a defendant from waiving the statute of limitations in this situation"].)

Some states have traditionally provided *no* statutes of limitation in criminal cases, while many states, including California, do not limit the time for prosecuting certain crimes. (E.g., § 799; see *The Criminal Statute of Limitations, supra,* 37 Wm. & Mary L.Rev. 199, 250, fn. 223; *A Model for Reform, supra,* 65 Wash. L.Rev. 189, 191 & fns. 13, 14; *A Time for Reform, supra,* 80 J. Crim. L. & Criminology 842, 845-846.) Criminal statutes of limitation appear no more rooted in the Constitution or the traditions underlying the American legal system than their civil counterparts.[30]

It follows that "[w]hatever grievance [the defense in a criminal case] may have at the change of policy to its disadvantage, it had acquired no immunity

[30]By all accounts, criminal statutes of limitation were not part of the English common law. (See *Marion, supra,* 404 U.S. 307, 317 [92 S.Ct. 455, 462]; *Doggett, supra,* 505 U.S. 647, 667-668 [112 S.Ct. 2686, 2699] (dis. opn. of Thomas, J.) [discussing common law rule that "time does not run against the king"]; 21 Am.Jur.2d, Criminal Law, § 291, p. 346.) Thus, while federal and state statutes regulating the time for filing criminal charges have existed since adoption of the United States Constitution, their popularity in this country has been viewed as somewhat of a mystery. (See *The Criminal Statute of Limitations, supra,* 37 Wm. & Mary L.Rev. 199, 249, fn. 222, pp. 252-256 & fns. 233, 234, 240, 241; Note, *The Statute of Limitations in Criminal Law: A Penetrable Barrier to Prosecution* (1954) 102 U. Pa. L.Rev. 630, 631-632 & fn. 7.) However, statutes of limitation governing property claims and other civil lawsuits apparently have more ancient roots, and their history has been easier for scholars to trace. (See *The Criminal Statute of Limitations, supra,* 37 Wm. & Mary L.Rev. 199, 256-257 [noting that English statutes of limitation applicable to actions on realty date from the 13th century and that, in 1623, Parliament enacted a comprehensive statute limiting the

from [prosecution] that has become a federal constitutional right." (*Chase, supra*, 325 U.S. 304, 316 [65 S.Ct. 1137, 1143].) Under no existing interpretation of substantive due process principles is the Legislature without power to limit or deny a statute of limitations claim in a criminal case after it has been acquired. In light of *Chase, supra*, 325 U.S. 304, a contrary conclusion is foreclosed. (See *State* v. *Cookman, supra*, 920 P.2d 1086, 1095-1097 (conc. & dis. opn. of Gillette, J.) [amendment increasing time to file child molestation charges does not offend due process insofar as it applies to defendants who achieved repose before statutory period was changed]; *Retroactivity and Childhood Sexual Abuse, supra*, 28 Pacific L.J 796, 802-804 [section 803(g) does not offend substantive due process guarantees]; *Time's No Bar to Revival, supra*, 22 Ind. L.Rev. 989, 1014-1019 [same general conclusion regarding retroactive expansion of criminal statutes of limitation].)

The sole authority cited in support of defendant's federal due process theory are cases resolving analogous claims under the ex post facto clause, as discussed earlier in the opinion. We note that in defendant's brief on the merits in this court, the claim that section 803(g) impairs a "vested" right in violation of substantive due process guarantees is inextricably intertwined with his ex post facto claim. Both arguments share the same headings and textual discussion, and are accompanied by the same case citations.

However, as we have previously explained, the reasoning underlying *Falter, supra*, 23 F.2d 420, and other cases on which defendant relies is flawed. They rest on an expansive view of the ex post facto clause which was disapproved in *Collins, supra*, 497 U.S. 37, 45-52 [110 S.Ct. 2715, 2720-2724]. Under *Collins*, the legislative branch is not prohibited from retroactively expanding a criminal statute of limitations, because neither the definition of criminal conduct nor an increase in punishment is involved. Statutes governing the time at which a future criminal action may be filed are not enactments on which defendants may reasonably rely in deciding whether to commit an act otherwise defined as criminal and subject to punishment under the law in existence at the time.

While defendant focuses for due process purposes on the time at which the limitations period in section 800 or 801 expires, nothing compels or

time for actions on real property, debt, contract, and torts]; see also *Wood* v. *Carpenter* (1879) 101 U.S. (11 Otto) 135, 139 [25 L.Ed. 807, 808] [explaining that the 1623 "English statute of limitations of the 21st of James I . . . was adopted in most of the American colonies before the Revolution, and has since been the foundation of nearly all of the like legislation in this country"].)

authorizes this court to find that he acquired a "vested" or "fundamental" right under the United States Constitution with which section 803(g) impermissibly interferes. We decline to invalidate section 803(g) based on a new constitutional right which, under *Chase, supra,* 325 U.S. 304, the high court has itself refused to embrace.[31]

---

[31]As suggested by the People, we reach no different conclusion even assuming we consider substantive due process principles applied outside the statute of limitations context and *Chase, supra,* 325 U.S. 304.

On the one hand, the United States Supreme Court has indicated that, in addition to various specific protections afforded by the Bill of Rights, the due process clause of the Fourteenth Amendment protects certain "fundamental rights" and "liberty interests," at least where issues of marriage, family, procreation, and certain forms of bodily integrity are concerned. (See *Washington* v. *Glucksberg* (1997) 521 U.S. 702, 719-720 [117 S.Ct. 2258, 2267-2268, 138 L.Ed.2d 772] [discussing general scope of substantive due process], 728 [117 S.Ct. at p. 2271] [finding that "assistance in committing suicide is not a fundamental liberty interest protected by the Due Process Clause"]; *Reno* v. *Flores* (1993) 507 U.S. 292, 302-303 [113 S.Ct. 1439, 1447-1448, 123 L.Ed.2d 1] [finding immigration policy placing deportable alien juveniles in custodial care rather than releasing them to unrelated adults implicates no fundamental liberty interest]; *Planned Parenthood of Southeastern Pa.* v. *Casey* (1992) 505 U.S. 833, 847-849 [112 S.Ct. 2791, 2804-2806, 120 L.Ed.2d 674] [describing cases in which substantive due process rights have been recognized]; *Bowers* v. *Hardwick* (1986) 478 U.S. 186, 190-192 [106 S.Ct. 2841, 2843-2845, 92 L.Ed.2d 140] [discussing general scope of substantive due process and declining to "extend a fundamental right to homosexuals to engage in acts of consensual sodomy"].) On the other hand, the high court has been reluctant to conduct a substantive due process inquiry where the interests at issue are addressed by other more specific provisions of the Constitution. (See *Albright* v. *Oliver* (1994) 510 U.S. 266, 274 [114 S.Ct. 807, 813, 127 L.Ed.2d 114] (plur. opn. of Rehnquist, C. J.) [declining to find substantive due process right to be free from criminal prosecution absent probable cause because the "Framers considered the matter of pretrial deprivations of liberty and drafted the Fourth Amendment to address it"]; *Graham* v. *Connor* (1989) 490 U.S. 386, 395 [109 S.Ct. 1865, 1871, 104 L.Ed.2d 443] ["*All* claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing these claims"].)

Nothing in the foregoing authorities supports defendant's claim that expiration of the statute of limitations in section 800 gives rise to a "fundamental right" which section 803(g) impermissibly seeks to withdraw. Recognition of such a novel right may also be foreclosed to the extent the matter " 'is covered by' " other more specific provisions of the United States Constitution. (*County of Sacramento* v. *Lewis* (1998) 523 U.S. 833, 843-844 [118 S.Ct. 1708, 1715, 140 L.Ed.2d 1043].) As we have seen, the ex post facto clause addresses the circumstances under which penal laws, "whatever their form," can be "altered by legislative enactment, after the fact, to the disadvantage of the accused." (*Beazell, supra,* 269 U.S. 167, 170 [46 S.Ct. 68, 69]; accord, *Collins, supra,* 497 U.S. 37, 41-43 [110 S.Ct. 2715, 2718-2720].) And, as we shall discuss, the Fifth Amendment plays at least "a limited role" in regulating the passage of time between the crime and indictment, whether or not the statute of limitations has run. (*Lovasco, supra,* 431 U.S. 783, 789 [97 S.Ct. 2044, 2048].)

Of course, substantive due process principles preclude arbitrary and capricious legislation even where no fundamental right or liberty interest is at stake. (See *Reno* v. *Flores, supra,* 507 U.S. 292, 305 [113 S.Ct. 1439, 1448-1449] ["The impairment of a lesser interest . . . demands no more than a 'reasonable fit' between governmental purpose . . . and the means chosen to advance that purpose"].) Contrary to what defendant claims, section 803(g) is not unconstitutional under this deferential standard insofar as the statute "revives" previously time-barred prosecutions. Indeed, as the legislative history suggests, the statute is based on the assumption that past and future sex crimes against children, even though subject to corroboration by independent evidence, would otherwise go unpunished given the difficulty young victims experience remembering and reporting such events, and their emotional vulnerability at the hands of adult perpetrators, including those in positions of trust. The means chosen by the Legislature—allowing prosecution within one year of the official report, inserting express retroactivity and revival provisions, and requiring independent corroboration—seem particularly well suited to addressing the serious concerns underlying section 803(g). For all the foregoing reasons, we reject defendant's substantive due process challenge.

Finally, defendant suggests that use of section 803(g) to provide an additional one-year period in which to file child molestation charges where the six-year period in section 800 had expired before January 1, 1994, violates his right to a fair trial under the Fifth Amendment of the United States Constitution. The implication seems to be that, by allowing indictment based on acts committed before January 1, 1988, section 803(g) creates an unacceptable risk that the ability to contest the charge will be impaired by the passage of time. According to defendant, such a result is "fundamentally unfair" and offends procedural due process guarantees. (*Lovasco, supra,* 431 U.S. 783, 796 [97 S.Ct. 2044, 2051-2052]; see *Medina* v. *California* (1992) 505 U.S. 437, 443 [112 S.Ct. 2572, 2576, 120 L.Ed.2d 353].)

In *Lovasco,* the defendant was charged in federal court with possessing and selling firearms that had been stolen from the United States mails about 18 months earlier. Although the charges were evidently not time-barred as a statutory matter, the defendant moved to dismiss the indictment on grounds of unreasonable prejudicial delay. At the ensuing hearing, the defense presented evidence that the prosecution had acquired most of its information in the case by the time a postal inspector's report was prepared one month after the crime. The defendant also established that two witnesses who could have been called on his behalf at trial had since died. On rebuttal, the prosecution explained that the investigation continued even after the postal report was prepared in order to determine whether the weapons had been

supplied by defendant's son, who handled mail at the location from which they had apparently been stolen. Based on evidence adduced at the hearing, the district court granted the motion to dismiss.

The Eighth Circuit Court of Appeals affirmed. The court did not question the prosecution's stated reason for deferring indictment, namely, to await additional investigation and to determine whether other participants could be linked to the crime. Nevertheless, the ensuing delay was deemed unreasonable since it resulted in the loss of testimony favorable to the defense. In reaching this conclusion, the appellate court basically adopted the defendant's view that "due process bars prosecution whenever a defendant suffers prejudice as a result of preindictment delay." (*Lovasco, supra*, 431 U.S. at p. 789 [97 S.Ct. at p. 2048].)

The United States Supreme Court reversed. *Lovasco* began by reaffirming the basic principle that due process plays "a limited role" in protecting against "oppressive" preaccusation delay even where no statute of limitations has run. (431 U.S. at p. 789 [97 S.Ct. at p. 2048].) The high court confirmed that "proof of actual prejudice" to the defense is necessary to prevail on such a constitutional claim. (*Ibid.*) However, the lower courts erred in *Lovasco* insofar as they assumed that a showing of prejudice was sufficient in this context. The high court made clear that the due process inquiry contemplated by *Lovasco*, and the cases on which it relied, also requires consideration of "the reasons for the delay." (*Id.*, at p. 790 [97 S.Ct. at p. 2049].)

*Lovasco* explained that the latter requirement is not satisfied where indictment is postponed after "probable cause" of defendant's involvement in a crime appears, or even after evidence sufficient to prove his guilt "beyond a reasonable doubt" is obtained. (431 U.S. at pp. 791-792 [97 S.Ct. at pp. 2049-2050].) Rather, the court held that prejudicial preaccusation delay offends "the Due Process Clause of the Fifth Amendment" when undertaken "solely 'to gain tactical advantage over the accused.' " (*Id.*, at p. 795 [97 S.Ct. at p. 2051], citing *Marion, supra*, 404 U.S. 307, 324 [92 S.Ct. 455, 465].) For numerous reasons that need not be repeated here, the court explained that a contrary rule could hamper legitimate criminal investigations and unduly interfere with nuanced charging decisions beneficial to both the accused and the administration of justice.

*Lovasco* declined to describe "in the abstract the circumstances in which preaccusation delay would require dismissing prosecutions," noting that the constitutional rule adopted therein could not be applied outside "the particular circumstances of individual cases." (431 U.S. at pp. 796-797 [97 S.Ct. at

p. 2052].) However, based on the factual record that had been developed in *Lovasco*, the court concluded that it was not "fundamentally unfair" to require the defendant to stand trial. (*Id.*, at p. 796 [97 S.Ct. at p. 2052].) Notwithstanding any loss of evidence the defense may have sustained, the record showed only that the government engaged in legitimate efforts to discern the full scope of the criminal enterprise during the 18-month period before charges were filed.

Contrary to what defendant seems to imply, nothing in *Lovasco* or the due process principles on which it relied warrants wholesale invalidation of section 803(g), regardless of when the charged crime occurred or when the statutory period in section 800 or 801 otherwise expires. As we have seen, prosecutors have wide latitude in conducting criminal investigations and determining whether and when indictments should be filed. Such discretionary decisions offend the United States Constitution only where unfair tactics or improper motives are involved, and where the defendant's ability to refute the charge is materially damaged as a result. As *Lovasco* recognized, no court can make such a determination "in the abstract," without considering "the particular circumstances of [the] individual case[ ]." (431 U.S. 783, 796-797 [97 S.Ct. 2044, 2052].)

Because the claim is not "ripe for adjudication" in the present case, we express no opinion on whether, by analogy to principles set forth in *Lovasco*, defendant's procedural due process rights have been violated by the 12-year lapse between commission of the alleged crime and the filing of the complaint. (431 U.S. at p. 789 [97 S.Ct. at p. 2048].) We hold only that, under existing interpretations of the Fifth Amendment, there is no basis on which to facially invalidate section 803(g), either on the ground its one-year limitations period leads to excessive charging delays, or on the ground section 803(g) applies even where the six-year period in section 800 "has expired."[32]

---

[32]After oral argument, this court requested supplemental briefs from the parties on the validity of section 803(g) under the due process clauses of the state Constitution. (See Cal. Const., art. I, §§ 7, 15.) Defendant suggests these provisions deprive the Legislature of power to "revive" the statute of limitations after it has run in a criminal case. In so doing, he relies exclusively on our venerable decision in *Chambers* v. *Gallagher* (1918) 177 Cal. 704 [171 P. 931] (*Chambers*), which precluded retroactive application of a new limitations period in a tax matter. The dissenting Justices embrace defendant's state law theory in the present case, reasoning that a criminal defendant possesses an absolute state due process right to repose that, once achieved, necessarily requires invalidation of any law withdrawing such repose, regardless of the particular circumstances of the case. We disagree.

At the outset, we do not necessarily agree with defendant that *Chambers, supra*, 177 Cal. 704, applies here. *Chambers* relied on the California Constitution to hold that the state Controller could not use a new, longer statute of limitations to collect unpaid inheritance taxes

## VI. Disposition

Section 803(g) is not unconstitutional on any ground asserted by defendant. The judgment of the Court of Appeal is reversed.

George, C. J., Werdegar, J., and Chin, J., concurred.

**KENNARD, J.,** Dissenting.—After the statute of limitations for a criminal offense has run, may the state prosecute an individual for that offense under a new law "reviving" the expired limitations period? According to the majority, the state may do so. I disagree. In the oft-quoted words of Judge Learned Hand: "[T]o revive a prosecution already dead" is contrary to "our instinctive feelings of justice and fair play. For the state to assure a man that he has become safe from its pursuit, and thereafter to withdraw its assurance, seems to most of us unfair and dishonest." (*Falter* v. *United States* (2d Cir. 1928) 23 F.2d 420, 425-426.)

I

On October 21, 1996, the Mendocino County District Attorney filed a complaint in the municipal court charging defendant with one count of child

---

where the underlying obligation was already time-barred when the new statute took effect. However, in the 80 years since it was decided, *Chambers* has not been used by any state court to strike down a statute like section 803(g) in a criminal case or in any civil case not involving some form of tax dispute. (See *People* v. *Universal Film Exchanges* (1950) 34 Cal.2d 649 [213 P.2d 697]; *Tannhauser* v. *Adams* (1947) 31 Cal.2d 169 [187 P.2d 716, 5 A.L.R.2d 1015]; *Riley* v. *Howard* (1924) 193 Cal. 522 [226 P. 393]; *Riley* v. *Havens* (1924) 193 Cal. 432 [225 P. 275]; *Chambers* v. *Gibson* (1918) 178 Cal. 416 [173 P. 752]; *Nelson* v. *Flintkote Co.* (1985) 172 Cal.App.3d 727 [218 Cal.Rptr. 562]; *Learner Co.* v. *County of Alameda* (1965) 234 Cal.App.2d 278 [44 Cal.Rptr. 535]; but see *Carr* v. *State of California* (1976) 58 Cal.App.3d 139, 147-148 [129 Cal.Rptr. 730] [dictum].) Indeed, several Courts of Appeal have at least implicitly distinguished *Chambers, supra,* 177 Cal. 704, and upheld a civil statute of limitations "reviving" common law causes of action based on childhood sexual abuse. (See Code Civ. Proc., § 340.1; *Tietge* v. *Western Province of the Servites, Inc.* (1997) 55 Cal.App.4th 382 [64 Cal.Rptr.2d 53]; *Lent* v. *Doe* (1995) 40 Cal.App.4th 1177 [47 Cal.Rptr.2d 389]; *Liebig* v. *Superior Court* (1989) 209 Cal.App.3d 828 [257 Cal.Rptr. 574]; see also 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, §§ 433-435, pp. 542-546 [suggesting that the scope and viability of *Chambers, supra,* 177 Cal. 704, is "unsettled"].)

To strike down section 803(g) solely on the ground the Legislature has withdrawn repose after such an expectation has been acquired, without evidence of actual prejudice to the defense, goes far beyond any notion of "fundamental fairness" protected by the due process clauses of the California Constitution. It may be that a defeated expectation of repose, as one factor in a factual showing of substantial prejudice depriving the defendant of a fair trial, could justify a finding that section 803(g) violates state due process principles *as applied* in a particular case. However, no such claim is made here. For the foregoing reasons, we reject defendant's facial challenge to section 803(g) under the due process clauses of the state Constitution.

molestation (Pen. Code, § 288, subd. (a))[1] allegedly committed 12 years earlier, between October 1 and December 31, 1984.

In 1984, prosecution for the crime defined in section 288, subdivision (a), was limited by a six-year statute of limitations. (Former § 800, subd. (b), as amended by Stats. 1982, ch. 583, § 1, pp. 2543-2544.) That period expired in 1990. But in 1994, 10 years after the alleged commission of the offense in this case, and 4 years after the statute of limitations expired, the Legislature extended the statute of limitations indefinitely. It did so by adding subdivision (g) to section 803 (section 803(g)), providing that a complaint alleging a violation of section 288 (or other specified sexual offenses committed against a minor) may be filed within a year after the alleged victim reports the incident to a law enforcement agency; there is no time limitation for making such reports. Two years later, in 1996, the Legislature added subpart (3)(A) to section 803(g), stating that a complaint filed under 803(g) "shall revive any cause of action barred by Section 800 . . . ."

Defendant demurred to the complaint. He argued that the complaint on its face showed that the original six-year statute of limitations had expired long before the Legislature extended the limitations period by enacting section 803(g), and that to charge him with child molestation under the revived statute of limitations violated the ex post facto clauses of the United States and California Constitutions (U.S. Const., art. I, § 10; Cal. Const., art. I, § 9) as well as "the due process clause." The magistrate sustained the demurrer and dismissed the case, ruling that the prosecution violated the federal Constitutional provision barring ex post facto laws. After an unsuccessful attempt in superior court to reinstate the complaint, the People sought review in the Court of Appeal, which affirmed the judgment.

## II

Today, California becomes the only jurisdiction, state or federal, to permit "revival" prosecutions under an extended statute of limitations enacted after the expiration of the original statute of limitations. All other jurisdictions that have addressed the issue have concluded or assumed that these prosecutions violate article I, section 10, clause 1 of the federal Constitution, which provides that "[n]o state shall pass any . . . ex post facto law . . . ." (See, e.g., cases cited in maj. opn., *ante*, at p. 764, fn. 25, and p. 765, fn. 27.) According to the majority, however, the United States Supreme Court's recent decision in *Collins* v. *Youngblood* (1990) 497 U.S. 37 [110 S.Ct. 2715, 111 L.Ed.2d 30], which unlike this case did not involve a statute of limitations, has limited the scope of the ex post facto clause. Therefore, the

---

[1] All subsequent undesignated statutory references are to the Penal Code.

majority holds, revival prosecutions no longer violate the ex post facto clause.

If, as the majority concludes, revival prosecutions do not violate the ex post facto clause, two questions remain: do they violate the *due process* guarantees of either (1) the federal or (2) the state Constitution? The majority devotes considerable time to answering the first question, concluding there is no federal due process violation. But the majority ignores the state due process question. Because I find the resolution of this question dispositive here, I, unlike the majority, do not decide the federal constitutional issue.

### III

In rejecting defendant's *federal* due process claim, the majority relies on *Chase Securities Corp.* v. *Donaldson* (1945) 325 U.S. 304 [65 S.Ct. 1137, 89 L.Ed. 1628] (*Chase Securities*). There, the United States Supreme Court held that revival of a *civil* cause of action did not violate the due process clause of the Fourteenth Amendment to the federal Constitution. Forty years earlier, the court had reached the same conclusion in *Campbell* v. *Holt* (1885) 115 U.S. 620 [6 S.Ct. 209, 29 L.Ed. 483] (*Campbell*). In reexamining *Campbell,* the high court in *Chase Securities* noted that many state courts had rejected *Campbell*'s reasoning when construing the due process clauses of their own constitutions: "We are reminded that some state courts have not followed [*Campbell*] in construing provisions of their constitutions similar to the due process clause. Many have, as they are privileged to do, so interpreted their own easily amendable constitutions . . . ." (*Chase Securities, supra,* 325 U.S. at p. 312 [65 S.Ct. at pp. 1141-1142], fn. omitted.) Among the many states that did so was California, in *Chambers* v. *Gallagher* (1918) 177 Cal. 704 [171 P. 931] (*Chambers*).

In *Chambers,* the state Controller sought to collect an inheritance tax under a revived statute of limitations. This court held that the action violated the due process clause of the *California* Constitution. (*Chambers, supra,* 177 Cal. at p. 708.) We acknowledged that the United States Supreme Court had reached a contrary conclusion in construing the due process clause of the *federal* constitution in *Campbell, supra,* 115 U.S. 620. But we declined to follow *Campbell,* observing that our conclusion was "supported by the almost universal course of decision in the United States." (*Chambers, supra,* 177 Cal. at p. 709.)

*Chambers, supra,* 177 Cal. 704, is still good law, and the majority makes no attempt to overrule it. It remains squarely within the mainstream of

modern judicial thought. The majority of courts in other states in which the issue has arisen have declined to follow the United States Supreme Court's decisions in *Chase Securities, supra,* 325 U.S. 304, and *Campbell, supra,* 115 U.S. 620, in construing the due process clauses of their state constitutions, holding that these clauses prohibit a state legislature from reviving time-barred civil actions. As the Rhode Island Supreme Court stated recently: "We are not unmindful that *Campbell*[, *supra,* 115 U.S. 620], [*William*] *Danzer* [v. *Gulf R.R.* (1925) 268 U.S. 633 [45 S.Ct. 612, 69 L.Ed. 1126]], and *Chase* [*Securities, supra,* 325 U.S. 304] remain the foundation stones for the current general federal rule. The state appellate courts, however, are free to interpret and to construe their own state constitutional due process and equal protection provisions. In so doing, the 'great preponderance' of state appellate courts do not apply or follow the general federal rule." (*Kelly* v. *Marcantonio* (R.I. 1996) 678 A.2d 873, 883; see also *Wiley* v. *Roof* (Fla. 1994) 641 So.2d 66, 67-69; *State of Minn.* ex rel. *Hove* v. *Doese* (S.D. 1993) 501 N.W.2d 366, 369-370; *Starnes* v. *Cayouette* (1992) 244 Va. 202 [419 S.E.2d 669, 671-675]; *Johnson* v. *Lilly* (1992) 308 Ark. 201 [823 S.W.2d 883, 885]; *Givens* v. *Anchor Packing, Inc.* (1991) 237 Neb. 565 [466 N.W.2d 771, 773-775]; *Colony Hill Condo. I Ass'n* v. *Colony Co.* (1984) 70 N.C.App. 390 [320 S.E.2d 273, 276]; *Wilson* v. *All-Steel, Inc.* (1981) 87 Ill.2d 28 [56 Ill.Dec. 897, 428 N.E.2d 489, 494-495]; *Dobson* v. *Quinn Freight Lines, Inc.* (Me. 1980) 415 A.2d 814, 816; *Zitomer* v. *Slate* (1974) 21 Md.App. 709 [321 A.2d 328, 331], revd. other grounds *sub nom. Slate* v. *Zitomer* (1975) [275 Md. 534 [341 A.2d 789]; *Haase* v. *Sawicki* (1963) 20 Wis.2d 308 [121 N.W.2d 876, 878]; *Jackson* v. *Evans* (1940) 284 Ky. 748 [145 S.W.2d 1061, 1062]; *In re Swan's Estate* (1938) 95 Utah 408 [79 P.2d 999]; *Cathey* v. *Weaver* (1922) 111 Tex. 515 [242 S.W. 447, 453]; see also *Orleans Parish School Bd.* v. *U.S. Gypsum Co.* (E.D.La. 1995) 892 F.Supp. 794, 806-807 [federal court applying Louisiana law]; *Waller* v. *Pittsburgh Corning Corp.* (D.Kan. 1990) 742 F.Supp. 581, 583-585 [federal court applying Kansas law].)

Six other states have found legislation reviving time-barred civil actions invalid under other provisions of their Constitutions (*Johnson* v. *Garlock, Inc.* (Ala. 1996) 682 So.2d 25, 28; *Doe* v. *Roman Catholic Diocese* (Mo. 1993) 862 S.W.2d 338, 340-341; *Gould* v. *Concord Hosp.* (1985) 126 N.H. 405 [493 A.2d 1193, 1195]; *Jefferson Cty. Dept. of Soc. Serv.* v. *D. A. G.* (1980) 199 Colo. 315 [607 P.2d 1004, 1005-1006]; *Wright* v. *Keiser* (Okla. 1977) 568 P.2d 1262, 1267; *Ford Motor Company* v. *Moulton* (Tenn. 1974) 511 S.W.2d 690, 695-696), while some courts have held that legislation reviving a previously dead claim does not violate due process (see cases cited in *Waller* v. *Pittsburgh Corning Corp., supra,* 742 F.Supp. at p. 584).

All of these decisions involved statutes of limitations in *civil* cases, as did the high court's decision in *Chase Securities, supra,* 325 U.S. 304, and this

court's decision in *Chambers, supra*, 177 Cal. 704. I am not aware of any published decision resolving the issue presented here: whether revival of a time-barred *criminal* prosecution, by legislative extension of the statute of limitations, denies the defendant due process. (See, however, *State* v. *Cookman* (1994) 127 Or.App. 283 [873 P.2d 335, 337-338] [opinion of three judges of ten-judge panel of intermediate appellate court hearing matter, concluding that revival prosecutions violate due process clause of Fourteenth Amendment; three other judges agreed with the result on other grounds], affd. on other grounds (1996) 324 Or. 19 [920 P.2d 1086].) Why this dearth of authority? Certainly not because due process protections apply with greater force in the civil than in the criminal context. To the contrary. In criminal prosecutions, due process requirements are frequently more demanding, because a criminal prosecution places the accused's personal liberty in jeopardy, and, as this court has recognized, "personal liberty is a fundamental interest, second only to life itself, as an interest protected under [the due process clauses of] the California and United States Constitutions." (*People* v. *Olivas* (1976) 17 Cal.3d 236, 251 [131 Cal.Rptr. 55, 551 P.2d 375].) The only reason why until today courts in general have not considered the due process implications of reviving a time-barred criminal prosecution is that, as I have explained (see pp. 777-778, *ante*), the courts have held or assumed that such a prosecution violates the federal Constitution's ex post facto clause, thus dispensing with the need to resolve the issue under the due process clause.

Revival of a time-barred criminal prosecution violates the guarantee of "fundamental fairness" that is the essence of the due process protection provided by our state Constitution. (See *People* v. *Ramos* (1984) 37 Cal.3d 136, 153 [207 Cal.Rptr. 800, 689 P.2d 430].) As the United States Supreme Court has observed, statutes of limitations "provide predictability by specifying a limit beyond which there is an irrebuttable presumption that a defendant's right to a fair trial would be prejudiced." (*United States* v. *Marion* (1971) 404 U.S. 307, 322 [92 S.Ct. 455, 464, 30 L.Ed.2d 468].) Statutes of limitations tell people when they no longer need to fear prosecution for crimes which they may or may not have committed. After a statute of limitations for a crime has run, all persons, guilty or innocent, having any reason to anticipate that they might have been subject to prosecution for that crime may throw away documents or other items that might have been useful to support a defense, secure in the belief that prosecution is no longer a possibility. Because the self-incrimination privilege does not survive an expired statute of limitations (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 149, fn. 13 [137 Cal.Rptr. 14, 560 P.2d 1193]; *Ex parte Cohen* (1894) 104 Cal. 524, 528 [38 P. 364]; see also *Brown* v. *Walker* (1896) 161 U.S. 591, 598 [16 S.Ct. 644, 647, 40 L.Ed. 819]), a person may be forced to testify

about a crime in civil proceedings held long after the statute of limitations for the crime has expired.[2]

The State of California has an obligation to deal fairly with its citizens. Once it has made an absolute and irrefutable assurance that it will not initiate a prosecution, it may not renege on that promise years afterwards, when memories may have faded and evidence may have been destroyed.

The majority here acknowledges that statutes of limitations serve similar interests in criminal and civil cases. Those interests "include both societal repose and the protection of individuals whose means of defense might be impaired by the passage of time." (Maj. opn., *ante*, at p. 770.) This court implicitly recognized the importance of those interests in *Chambers, supra*, 177 Cal. 704, a civil case holding that the state Controller's action to collect an inheritance tax under a revived statute of limitations violated the due process of the state Constitution. If this is impermissible in a civil case, it should also be impermissible in a criminal prosecution, where the accused's personal liberty is at stake.

The majority, however, takes a different view. Relegating to a mere footnote its cursory comment on the applicability here of this court's decision in *Chambers*, the majority attempts to distinguish that case by observing that it involved a civil tax dispute. (Maj. opn., *ante*, at p. 775, fn. 32.) The majority's view is untenable. Assume, for instance, that the statute of limitations for bringing a civil suit to collect unpaid taxes and for bringing criminal charges for failing to pay taxes were each five years, and that the Legislature passed laws reviving both statutes of limitations after each had expired. Under the view of the majority, the state's civil tax action would violate the taxpayer's due process rights under the state Constitution, but the state's criminal prosecution of the same taxpayer would not. An odd and unfair result indeed.

The majority also looks to some decisions by our Courts of Appeal as a basis of support for its view here. Those cases upheld the validity of a civil statute of limitations reviving *common law* causes of action based on childhood sexual abuse, by distinguishing *Chambers, supra*, 177 Cal. 704, on the ground that *Chambers* precludes revival only of statutory and not common law causes of action. (See, e.g., *Liebig* v. *Superior Court* (1989) 209 Cal.App.3d 828, 835 [257 Cal.Rptr. 574].) This court has never addressed the purported distinction. In any event, those decisions have no bearing on

---

[2]Such testimony is particularly likely when the alleged molester is a parent or stepparent. False allegations of child molestation are a not-uncommon phenomenon in bitterly contested child custody proceedings.

the applicability of *Chambers* in a criminal case, as here: "In California all crimes are statutory and there are no common law crimes." (*In re Brown* (1973) 9 Cal.3d 612, 624 [108 Cal.Rptr. 465, 510 P.2d 1017].)

Finally, the high court's decision in *Chase Securities, supra*, 325 U.S. 304, on which the majority bases its rejection of defendant's *federal* due process claim, provides no basis for us to reconsider our decision in *Chambers, supra*, 177 Cal. 704. "A change in course by the United States Supreme Court, interpreting the federal Constitution, is no justification for a change in this court's interpretation of the distinct provisions of our state Constitution. This court should disabuse itself of the notion that in matters of constitutional law and criminal procedure we must always play Ginger Rogers to the high court's Fred Astaire—always following, never leading. The rights guaranteed by the state Constitution 'are not dependent on those guaranteed by the United States Constitution.' (Cal. Const., art. I, § 24; see *Raven v. Deukmejian* (1990) 52 Cal.3d 336, 351-355 [276 Cal.Rptr. 326, 801 P.2d 1077].) We have the power and the duty to give independent meaning and force to the provisions of our state charter." (*People v. Cahill* (1993) 5 Cal.4th 478, 557-558 [20 Cal.Rptr.2d 582, 853 P.2d 1037] (dis. opn. of Kennard, J.).)

## IV

Today the majority makes California the first and only jurisdiction in this country to allow the prosecution of time-barred criminal offenses under an extended statute of limitations. I cannot join in this holding.

The State of California has an obligation to deal fairly with those it accuses of crimes. By allowing an existing statute of limitations to expire on an alleged offense, the state gives an assurance, which before today was always unconditional, that it will not prosecute for that offense. In my view, the due process guarantee of our state Constitution does not permit the state to withdraw that assurance years later, when recollections of the relevant events may have faded and exculpatory evidence may have been lost or discarded. Because the offenses of which defendant here is charged became time-barred before the Legislature extended the statute of limitations, I would affirm the Court of Appeal's judgment upholding the magistrate's order dismissing the complaint.

Mosk, J., concurred.

**BROWN, J.,** Dissenting.—I fully concur in Justice Kennard's well-reasoned analysis and conclusion that revival of a criminal statute of limitations

violates our state's constitutional guaranty of due process. (Cal. Const., art. I, §§ 7, 15.) I further agree we should not consider ourselves joined at the hip with the United States Supreme Court in interpreting the California Constitution, whose independent vitality this court is charged with preserving. (Cf. *Warden* v. *State Bar* (1999) 21 Cal.4th 628, 660 [88 Cal.Rptr.2d 283, 982 P.2d 154] (dis. opn. of Brown, J.) [state equal protection provisions should be interpreted independently of federal guaranty].) I write separately to emphasize an additional point on which the majority's holding contravenes the government's obligation to act with fundamental fairness.

Until *Cowan* v. *Superior Court* (1996) 14 Cal.4th 367, 374 [58 Cal.Rptr.2d 458, 926 P.2d 438] (*Cowan*), this court categorically had held that the statute of limitations invokes fundamental subject matter jurisdiction. (*People* v. *McGee* (1934) 1 Cal.2d 611, 613 [36 P.2d 378].) Although a number of other states concluded to the contrary, "in California the statute of limitations constitutes a substantive rather than a procedural right which is not waived by failure to assert it at the pleading stage. If reliability of evidence was the sole factor, certainly a conviction based on a guilty plea would be valid notwithstanding the running of a limitation period. Yet, it is now well settled that a conviction, even if based on a plea of guilty, is subject to collateral attack if the charge was originally barred by the applicable limitation period. [Citations.]" (*People* v. *Zamora* (1976) 18 Cal.3d 538, 547 [134 Cal.Rptr. 784, 557 P.2d 75].) "The point may therefore be raised at any time, before or after judgment." (*People* v. *McGee, supra,* 1 Cal.2d at p. 613; *People* v. *Chadd* (1981) 28 Cal.3d 739, 757 [170 Cal.Rptr. 798, 621 P.2d 837].) Accordingly, the People had the burden to plead and prove that the prosecution was commenced within the prescribed period (see *In re Demillo* (1975) 14 Cal.3d 598, 602 [121 Cal.Rptr. 725, 535 P.2d 1181]), and numerous Courts of Appeal have characterized it as an element of the offense. (See *People* v. *Bunn* (1997) 53 Cal.App.4th 227, 233 [61 Cal.Rptr.2d 734].) Although the rule is now modestly tempered (see *People* v. *Williams* (1999) 21 Cal.4th 335 [87 Cal.Rptr.2d 412, 981 P.2d 42]; *Cowan, supra,* 14 Cal.4th at pp. 374-375), for the most part application of the defense remains absolute.

I have elsewhere expressed my disagreement with this determination. (See *Cowan, supra,* 14 Cal.4th at pp. 383-393 (conc. and dis. opn. of Brown, J.).) Nevertheless, when the statutory period on the charged offense expired in 1990 and when the Legislature enacted Penal Code section 803, subdivision (g), in 1994, defendant could have asserted the limitations defense *at any time* and could have secured dismissal of the charges or reversal of his conviction.

Now, long after defendant achieved this jurisdictional repose, the majority deprives him of it without a qualm. The possibility defendant may have

committed the offense does not validate the majority's due process transgression. Child molestation will always rank among the most heinous and odious of crimes. The victims suffer long after completion of the act. Nonetheless, the potential that a guilty person will avoid just punishment is inherent in all statutes of limitations. Society has assumed this loss in exchange for other considerations. (See *People* v. *Zamora, supra,* 18 Cal.3d at p. 547; cf. *Wiley* v. *County of San Diego* (1998) 19 Cal.4th 532, 541 [79 Cal.Rptr.2d 672, 966 P.2d 983]; *Duckworth* v. *Egan* (1989) 492 U.S. 195, 223-224 [109 S.Ct. 2875, 2890-2891, 106 L.Ed.2d 166] (dis. opn. of Marshall, J.); *Abney* v. *United States* (1977) 431 U.S. 651, 661 [97 S.Ct. 2034, 2041, 52 L.Ed.2d 651] [double jeopardy]; *In re Winship* (1970) 397 U.S. 358, 372 [90 S.Ct. 1068, 1076-1077, 25 L.Ed.2d 368] (conc. opn. of Harlan, J.) [burden of proof beyond a reasonable doubt]; *Mapp* v. *Ohio* (1961) 367 U.S. 643, 659 [81 S.Ct. 1684, 1693-1694, 6 L.Ed.2d 1081] [exclusionary rule].) The Legislature has seen fit to change the rules defining the limitations period with respect to child molestation, as well it has authority to do. Applying that change to defendant in these circumstances is another matter, however, and one of constitutional dimension. Whether or not such application violates the ex post facto prohibition, in my view it most certainly does not comport with California's guaranty of fundamental fairness.

Respondent's petition for a rehearing was denied October 20, 1999, and the opinion was modified to read as printed above. Mosk, J., Kennard, J., and Brown, J., were of the opinion that the petition should be granted.